COMMONWEALTH of Pennsylvania,
Appellee

v.

Matthew PATTERSON, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 13, 2007.

Filed Dec. 31, 2007.

Mitchell S. Strutin, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BOWES, GANTMAN and ANTHONY,* JJ.

OPINION BY ANTHONY, J.:

¶ 1 Appellant, Matthew Patterson, appeals from the judgment of sentence imposed in the Court of Common Pleas of Philadelphia County on December 17, 2004. Upon review, we affirm. The relevant facts and procedural history follow.

* Retired Senior Judge assigned to The Superior Court.

¶ 2 On January 13, 2004, the Commonwealth charged Appellant with, *inter alia,* robbery, criminal conspiracy, burglary, carrying a firearm without a license, criminal trespass, and possessing an instrument of crime.[1] Appellant filed a timely motion to suppress, which the parties litigated on July 6, 2004. At this hearing, the Commonwealth presented the testimony of a number of witnesses.

¶ 3 The alleged victim, Eric Turner, testified that, on July 24, 2003 at 8 p.m., he hosted three guests at his apartment at 1220 Lindley Avenue in Philadelphia. One of the guests was a young man named Steve. During the visit, the men played video games, and Mr. Turner smoked a blunt. At approximately 11 p.m., the guests departed, and Mr. Turner retired to his living room couch to watch television. Mr. Turner eventually fell asleep on the couch. At approximately 1 a.m., Mr. Turner received a telephone call from Steve asking Mr. Turner to buzz him into the secured apartment building. Believing that Steve wanted to retrieve a wallet, Mr. Turner agreed. When Mr. Turner heard a knock at his door, he opened it, and Steve entered the apartment with two different companions. Mr. Turner testified that he recognized the first man (Appellant) from the neighborhood but did not know the other man.

¶ 4 Upon his arrival, Steve pestered Mr. Turner to give him a ride, and Mr. Turner repeatedly refused due to the late hour. After five minutes passed, Appellant pointed a firearm at Mr. Turner and told him to get down. Appellant eventually allowed Mr. Turner to sit on the couch and held him at gunpoint for two minutes while Steve rummaged through the apartment.

1. 18 Pa.C.S.A. §§ 3701(a)(1), 903(a), 3502, 6106(a), 3053(a), and 907, respectively.

Mr. Turner stated that he could see Appellant because he had a light on in an adjoining room. None of the men wore masks. Thereafter, Appellant gave the firearm to Steve and began to search the apartment himself. Appellant gathered some CDs and a Playstation game console and placed them into a book bag. The three men departed with the items. Mr. Turner notified the police and provided a description of the intruders.

¶ 5 The complainant further testified that, on November 30, 2003, he observed Appellant and an unidentified male near a gas station at Broad and Lindley Streets in Philadelphia. Appellant and his companion got into a car which was driven by a third man. Mr. Turner, who was pumping gasoline at the time, followed the vehicle, and contacted police. The vehicle parked in front of a restaurant, and Appellant and his companion went inside. When the police arrived, Mr. Turner, who was standing across the street, informed them that the driver of the vehicle was not involved in the robbery. The police then retrieved Appellant and his companion from the restaurant. Mr. Turner testified that he identified Appellant as a participant in the robbery and told the police that he was unsure about whether the companion was involved. The police arrested both men.

¶ 6 Mr. Turner further testified that, on December 9, 2003, a detective came to his place of employment and showed him a photo array. Mr. Turner identified Appellant as a participant in the robbery. Additionally, Mr. Turner identified Appellant, in open court, as one of the perpetrators. On redirect examination, he confirmed that he had no doubt about Appellant's participation. N.T. Suppression Hearing, 7/6/04, at 67.

¶ 7 Detective John Geliebter of the Philadelphia Police Department testified that he took a statement from Mr. Turner in the hours following the incident. Detective Geliebter recalled that Mr. Turner identified Steve as the one who first brandished the firearm and noted that Steve was also identified as the gunman in the written statement. The detective admitted, however, that he typed the statement and that he did not ask Mr. Turner to review or sign the statement at the conclusion of the interview.

¶ 8 Detective Stanley Schofield of the Philadelphia Police Department testified that he spoke to Mr. Turner at the precinct following the arrests at the restaurant. Initially, the detective thought that Mr. Turner had identified both men as perpetrators of the robbery. After additional discussion, however, the detective learned that Mr. Turner could only identify one with certainty. During the conversation, the detective tried to ascertain which of the two men Mr. Turner could identify. Eventually, the detective held Appellant's companion and released Appellant from custody. At the suppression hearing, the detective admitted that he misunderstood Mr. Turner and released the wrong man.

¶ 9 Detective Sekou Kinebrew testified that, in December of 2003, he prepared a photo line-up that contained Appellant's photograph. The detective testified that Mr. Turner identified Appellant almost immediately from the array.

¶ 10 After argument on the motion to suppress Mr. Turner's identification, the trial court denied the motion. Thereafter, the parties agreed to incorporate all non-hearsay testimony from the suppression hearing into the trial record, and both sides rested. Based upon the aforementioned evidence, the trial court, sitting as fact finder, convicted Appellant of the aforementioned offenses.

¶ 11 On December 17, 2004, the trial court sentenced Appellant to five to ten years' imprisonment for robbery, a concurrent term of five to ten years' imprisonment for criminal conspiracy, a concurrent term of two to four years' imprisonment for burglary, a concurrent term of one to two years' imprisonment for the firearm violation, a concurrent term of one to two years' imprisonment for criminal trespass, and a concurrent term of one to two years' imprisonment for possessing an instrument of crime. On December 28, 2004, Appellant filed a motion for reconsideration, which the trial court denied on January 3, 2005.

¶ 12 Appellant filed a notice of appeal on February 2, 2005. On March 9, 2005, the trial court authored an order directing Appellant to file a concise statement of matters complained of on appeal within fourteen days. Appellant filed a concise statement on March 23, 2005. On May 3, 2005, the trial court drafted an opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

¶ 13 On January 12, 2006, the trial court appointed new counsel, Mitchell Strutin. On March 20, 2006, new counsel filed an application with our Court in which he asked to supplement the 1925(b) statement filed by prior counsel. On April 12, 2006, our Court granted Appellant's request, ordered him to file a supplemental concise statement within fourteen days, and directed the trial court to file a supplemental opinion. Appellant's counsel filed a supplemental 1925(b) statement on April 17, 2006, and the trial court filed a supplemental opinion on March 20, 2007.

¶ 14 In his brief, Appellant raises the following issues for our review:

I. Whether [Appellant] ... is entitled to an arrest of judgment since the evidence is insufficient to sustain the verdicts of guilt as the Commonwealth failed to prove [Appellant's] ... identity as the perpetrator of the crime beyond a reasonable doubt.

II. Whether [Appellant] ... is entitled to a new trial as a result of the trial court's denial of his pretrial motion to suppress identification.

Appellant's Brief, at 4.

¶ 15 Before we may reach the merits of Appellant's issues, we must consider whether we have jurisdiction to entertain this appeal. *See Commonwealth v. Green*, 862 A.2d 613, 615 (Pa.Super.2004) (*en banc*), *appeal denied*, 584 Pa. 692, 882 A.2d 477 (2005), citing *Commonwealth v. Yarris*, 557 Pa. 12, 24, 731 A.2d 581, 587 (1999) (appellate courts may raise the issue of jurisdiction *sua sponte*). "Jurisdiction is vested in the Superior Court upon the filing of a timely notice of appeal." *Green*, 862 A.2d at 615, citing *Commonwealth v. Miller*, 715 A.2d 1203, 1205 (Pa.Super.1998).

¶ 16 "A direct appeal in a criminal proceeding lies from the judgment of sentence." *Commonwealth v. Preacher*, 827 A.2d 1235, 1236 n. 1 (Pa.Super.2003). In *Green, supra*, an *en banc* panel of our Court held that Rule 720 of the Pennsylvania Rules of Criminal Procedure governs the filing of an appeal from the judgment of sentence. In relevant part, Rule 720 states:

**Rule 720. Post–Sentence Procedures; Appeal**

**(A) Timing.**

(1) ... [A] written post-sentence motion shall be filed no later than 10 days after imposition of sentence.

(2) If the defendant files a timely post-sentence motion, the notice of appeal shall be filed:

(a) within 30 days of the entry of the order deciding the motion;

(b) within 30 days of the entry of the order denying the motion by operation of law in cases in which the judge fails to decide the motion;

(c) within 30 days of the entry of the order memorializing the withdrawal in cases in which the defendant withdraws the motion.

(3) If the defendant does not file a timely post-sentence motion, the defendant's notice of appeal shall be filed within 30 days of the imposition of sentence....

Pa.R.Crim.P. 720(A). In *Green, supra,* the court interpreted the language "imposition of sentence" as the date that the trial court pronounced the sentence in open court, not the date that the order imposing the judgment of sentence was docketed, if those dates are different. *Green,* 862 A.2d at 618–619.

¶ 17 In the instant case, the trial court imposed Appellant's sentence in open court on December 17, 2004. The certified record reveals that Appellant filed a post-sentence motion on December 28, 2004, eleven days after the imposition of sentence.[2] As Appellant failed to file a motion within ten days of the imposition of sentence, Appellant did not file a timely post-sentence motion. *See* Pa.R.Crim.P. 720(A). Therefore, Appellant had thirty days from the imposition of sentence to file his notice of appeal. *See* Pa.R.Crim.P. 720(A)(3); *Commonwealth v. Dreves,* 839 A.2d 1122, 1127 (Pa.Super.2003) (*en banc* ) (stating that, absent a timely filed post-sentence motion, the imposition of sen-

tence remains the triggering date for an appeal). Appellant filed his notice of appeal on February 2, 2005, forty-seven days after the imposition of sentence. Therefore, his notice of appeal appears untimely.[3]

¶ 18 Generally, an appellate court cannot extend the time for filing an appeal. *Commonwealth v. Braykovich,* 444 Pa.Super. 397, 664 A.2d 133, 136 (1995), citing Pa.R.A.P. 105(b); *Commonwealth v. Smith,* 348 Pa.Super. 10, 501 A.2d 273, 275 (1985) (stating "[a] court may not enlarge the time for filing a notice of appeal as a matter of grace or indulgence"). Nonetheless, this general rule does not affect the power of the courts to grant relief in the case of fraud or breakdown in the processes of the court. *See Braykovich, supra* at 136, citing Pa.R.A.P. 105, Explanatory Note; *Smith, supra* at 275. Thus, before our Court may quash the instant appeal, we must determine whether an administrative breakdown in the court system excuses the untimely filing of the notice of appeal.

¶ 19 The courts of this Commonwealth have held that a court breakdown occurred in instances where the trial court, at the time of sentencing, either failed to advise Appellant of his post-sentence and appellate rights or misadvised him. *See Commonwealth v. Coolbaugh,* 770 A.2d 788, 791 (Pa.Super.2001); *Commonwealth v. Bogden,* 364 Pa.Super. 300, 528 A.2d 168, 170 (1987); *Commonwealth v. Hurst,* 367 Pa.Super. 214, 532 A.2d 865, 867 (1987);

---

**2.** The tenth day fell on Monday, December 27, 2004. We note that the First Judicial District observed the Christmas holiday on Friday, December 24, 2004.

**3.** Our analysis does not change because the trial court entertained and denied Appellant's untimely motion. After the expiration of the ten-day period, a post-sentence motion cannot toll the appeal period unless the appellant

files a motion seeking permission to file a post-sentence motion *nunc pro tunc* and the trial court expressly grants this request within thirty days of the imposition of the sentence. *See Dreves,* 839 A.2d at 1128–29 (stating "[t]he trial court's resolution of the merits of a late post-sentence motion is no substitute for an order expressly granting *nunc pro tunc* relief").

*Commonwealth v. Katz,* 318 Pa.Super. 282, 464 A.2d 1343, 1345–1346 (1983). We have also found a breakdown where the clerk of courts did not enter an order notifying the appellant that his post-sentence motion was denied by the operation of law. *See Commonwealth v. Perry,* 820 A.2d 734, 735 (Pa.Super.2003); *Braykovich, supra.* In each of the aforementioned instances, the "breakdown" occurred when the trial court or the clerk of courts departed from the obligations specified in current Rules 704 and 720 of the Pennsylvania Rules of Criminal Procedure.

¶ 20 Rule 704(C)(3)(a) states that, at the time of sentencing, "[t]he judge **shall** determine on the record that the defendant has been advised ...", *inter alia,* "of the right to file a post-sentence motion and to appeal, ... [and] of the time within which the defendant must exercise those rights." Pa.R.Crim.P. 704(C)(3)(a) (emphasis added). The Comment to this Rule provides that "[t]his rule is intended to promote ... fair sentencing procedures ... by requiring that the defendant be fully informed of his or her post-sentence rights and the procedural requirements which must be met to preserve those rights." Pa. R.Crim.P. 704, Comment. Furthermore, Rule 720(B)(4)(a) states that "[a]n order denying a post-sentence motion, whether issued by the judge ... or entered by the clerk of courts ..., **shall** include notice to the defendant of", *inter alia,* "the right to appeal and the time limits in which the appeal must be filed." Pa.R.Crim.P. 720(B)(4)(a) (emphasis added). "This requirement ensures adequate notice to the ... [appellant], which is important given the potential time lapse between the notice provided at sentencing and the resolution

of the post-sentence motion." Pa. R.Crim.P. 720(B)(4)(a), Comment.

¶ 21 In the instant case, the trial court complied with Rule 704 at sentencing by notifying Appellant of the time in which to file his post-sentence motion and appeal. However, the trial court utterly failed to comply with the dictates of Rule 720. In the January 3, 2005 order denying Appellant's untimely post-sentence motion, the trial court did not notify Appellant that, due to the late filing of his post-sentence motion, he had to file an appeal within thirty days of the imposition of sentence. Had the trial court done so, Appellant could have filed a timely appeal within the fifteen days remaining in the appeal period.[4]

■ ¶ 22 In our view, the trial court's failure to comply with Rule 720 constitutes a breakdown that excuses the untimely filing of Appellant's notice of appeal. While Appellant did receive proper notification of his post-sentence and appellate rights at the time of sentencing, we will not deem partial compliance with the rules sufficient. Foremost, the use of the word "shall" in Rule 720(B)(4)(a) evinces the mandatory nature of the notification. *See Commonwealth v. Pleger,* 934 A.2d 715, 720 (Pa.Super.2007) (stating "shall" evinces a mandatory obligation). Second, the Comment to the Rule clearly states that Rule 720(B)(4) serves a distinct purpose from Rule 704, namely, to ensure adequate notice to the defendant given the routine delay between the sentencing and the disposition of the post-sentence motion. Finally, in the instant case, the trial court's compliance with this rule likely would have obviated the untimely filing of the appeal as Appellant had over two weeks remain-

---

4. The thirtieth day after the imposition of sentence fell on Sunday, January 16, 2005 and Monday, January 17, 2005 was a legal holiday. Thus, Appellant had until Tuesday, January 18, 2005 to file a timely appeal. *See* 1 Pa.C.S.A. § 1908.

ing in the appeal period after the trial court entered the order.

¶ 23 In so holding, we do not find that our Court's decision in *Dreves, supra,* compels us to quash the appeal. In *Dreves, supra,* the trial court properly advised the appellant of his post-sentence and appellate rights at sentencing, the appellant filed a post-sentence motion twenty days after the imposition of sentence, the trial court denied the motion three months later, and the appellant filed a notice of appeal within thirty days of the entry of the order denying the post-sentence motion. Our Court concluded that Appellant filed an untimely post-sentence motion, should have filed his notice of appeal within thirty days of the imposition of sentence, and quashed the appeal. Importantly, the *Dreves* court did not encounter a situation where the trial court's compliance or non-compliance with Rule 720 would have impacted upon the timeliness of the appeal. In *Dreves,* the trial court did not resolve the untimely post-sentence motion prior to the expiration of the appeal period. As such, we find *Dreves* factually distinguishable.[5] Finding that a court breakdown occurred, we will entertain the merits of the instant appeal.

■■■■■ ¶ 24 In his first issue, Appellant argues that the Commonwealth presented insufficient evidence to establish his identity as the perpetrator of the aforementioned crimes beyond a reasonable doubt. Appellant's Brief, at 15. Specifically, Appellant contends that the complainant's identification of Appellant was vague, tenuous and uncertain. *Id.* at 35. Appellant further contends that the Commonwealth has not sustained its burden because (1) the robbery took place in the early morning hours; (2) the complainant admitted that he had been sleeping when the intruders arrived; (3) the complainant admitted that he had smoked marijuana a few hours before their arrival; (4) the lighting conditions were less than optimal; (5) the complainant did not view the faces of the perpetrators for a sufficient length of time; (6) the complainant gave inconsistent accounts to the police of which man held the gun; (7) the complainant identified Appellant from a suggestive photo array; and (8) some confusion arose as to which man the complainant identified on the street. Appellant's Brief, at 33–35. Upon review, we disagree.

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Emler,* 903 A.2d 1273, 1276–77 (Pa.Super.2006).

---

5. We distinguish our Court's decision in *Commonwealth v. Wrecks,* 2007 PA Super 301, 934 A.2d 1287 for the same reason.

¶ 25 In support of his position, Appellant cites our Court's prior decisions in *Commonwealth v. Sharpe*, 138 Pa.Super. 156, 10 A.2d 120 (1939) and *Commonwealth v. Pereria*, 219 Pa.Super. 104, 280 A.2d 623 (1971). In *Sharpe*, the Commonwealth charged the appellant with robbery and related offenses stemming from allegations that he entered a business and robbed the employees of payroll money. At the time of the incident, the appellant wore a mask. At trial, a number of eyewitnesses testified. The first testified that he could not positively identify the appellant "beyond the fact that there is a general resemblance as to age and build and approximate height." *Sharpe*, 10 A.2d at 121. A second testified that he could not identify the appellant as the perpetrator but replied that the man was of the same general height and had the same "appearance from the top of the nose up." *Id.* A third stated that the man resembled the robber in stature, color of hair, and general appearance but refused to state that the defendant was the perpetrator. *Id.* A fourth remarked that he had selected the man from a line-up, that "something clicked that he was the man", but refused to identify him positively and without doubt in the courtroom. *Id.* The jury convicted the appellant based upon the foregoing testimony alone. On appeal, the appellant challenged the sufficiency of the evidence as to his identity. Our Court noted that "[w]here a witness states positively and without qualification that in his opinion the defendant is the man, that is sufficient proof." *Id.* However, we found that the eyewitnesses' testimony fell short of demonstrating "a well founded belief that the defendant is the man." *Id.* This testimony, without additional corroborative evidence of identity, failed to demonstrate the appellant's identity beyond a reasonable doubt.

¶ 26 In *Pereria*, the Commonwealth charged two men with burglary, conspiracy, and loitering and prowling at nighttime. At trial, the complainant testified that he was awakened at 3:30 a.m. by the sound of someone breaking into his car outside of the window. The complainant stated that he observed two men trying to pry open the trunk of his car but that the men fled before the police arrived at the scene. The complainant further testified that, the morning after the burglary, he visited the police station, reviewed a number of pictures, and identified two men, Alfred Pereria and Thomas Farrington, as the perpetrators. When asked if he could identify the two men in open court, the complainant responded that, as to Farrington, "[t]his is the face, but not the body." *Pereria*, 280 A.2d at 624. Further, as to Pereria, he stated that "[h]e too looks like the man, looks like the photograph, but I am not a hundred percent certain." *Id.* He added that it had been two years since the burglary and that his identification of the photographs two years ago was more positive since the events were fresh in his memory. On cross-examination, the complainant indicated again that he could not positively identify the appellants in open court but remarked that the men bore a resemblance to the photographs. He emphasized that the men he selected in the photographs were the perpetrators. Based upon the complainant's testimony alone, the jury convicted the appellants. On appeal, the appellants argued that the Commonwealth presented insufficient evidence as to identity. Our Court agreed and noted that the complainant refused to identify the men in open court and could only testify as to a vague resemblance. We added that the identifications were "vague, tenuous, and uncertain" and that the reliance upon photographs selected two years prior did not meet the standards necessary to convict beyond a reasonable doubt. *Id.* at 625. Therefore, we vacated

the appellants' judgments of sentence and discharged them.

¶ 27 In the instant case, the complainant identified Appellant, in open court, as one of the men that entered his home on July 24, 2003 at 1 a.m. On re-direct examination, Mr. Turner confirmed that he had no doubt about his identification. Unlike the eyewitnesses in *Sharpe* and *Pereria*, the complainant testified positively and without qualification that Appellant perpetrated the offenses. *See Commonwealth v. Wilder*, 259 Pa.Super. 479, 393 A.2d 927, 928 (1978) (stating a positive identification by one witness is sufficient for conviction).

¶ 28 Further, we find that Appellant's remaining challenges to the identification relate to the weight of the evidence, not to its sufficiency. *See Commonwealth v. Galloway*, 495 Pa. 535, 539, 434 A.2d 1220, 1222 (1981) (stating that variances in the testimony go to the credibility of the witnesses and not the sufficiency of the evidence); *Commonwealth v. Halye*, 719 A.2d 763, 764 (Pa.Super.1998) (*en banc*), *appeal denied*, 560 Pa. 699, 743 A.2d 916 (1999), *cert. denied sub nom, Pennsylvania v. Halye*, 529 U.S. 1012, 120 S.Ct. 1287, 146 L.Ed.2d 233 (2000) (mere conflict in the testimony does not render the evidence insufficient because it is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence). Therefore, viewing the evidence in the light most favorable to the verdict winner, we find that the Commonwealth presented sufficient evidence to establish Appellant's identity.

¶ 29 In his second issue, Appellant argues that the trial court erred when it denied his pre-trial motion to suppress Mr. Turner's identification of Appellant. Appellant's Brief, at 36. Appellant maintains that the trial court should have suppressed the identification because (1) the complain-ant's identification of Appellant was vague, tenuous and uncertain; (2) the robbery took place in the early morning hours; (3) the complainant admitted that he had been sleeping when the intruders arrived; (4) the complainant admitted that he had smoked marijuana a few hours before their arrival; (5) the lighting conditions were less than optimal; (6) the complainant did not view the faces of the perpetrators for a sufficient length of time; (7) the complain-ant gave inconsistent accounts to the police of which man held the gun; (8) a signifi-cant amount of time had passed between the incident and the complainant's obser-vation of Appellant on the street; and (9) the complainant identified Appellant from a suggestive photo array. Appellant's Brief, at 51–53. Upon review, we dis-agree.

¶ 30 When evaluating a trial court's refusal to suppress evidence, we must determine:

> whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evi-dence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the sup-pression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Stevenson*, 832 A.2d 1123, 1126 (Pa.Super.2003) (quotations omitted).

¶ 31 Foremost, we observe that the "exclusion of identification testi-mony is proper when improper police con-duct results in an impermissible suggestive confrontation." *Commonwealth v.*

*O'Bryant,* 320 Pa.Super. 231, 467 A.2d 14, 16 (1983) (quotations omitted). The courts will not suppress an identification based upon a challenge to the reliability of the identification alone; rather, the record must demonstrate suggestiveness. *See id.*

¶ 32 Herein, Appellant does allege that Mr. Turner selected him from a suggestive photo array. Specifically, he argues that, unlike most of the other photographs in the array, Appellant's photo exposed his neck and shoulders. Additionally, Appellant contends that, unlike the other photos, Appellant's photograph was taken from a distance and, as a result, made his head appear smaller than the others.

 ¶ 33 "A photographic identification is unduly suggestive when the procedure creates a substantial likelihood of misidentification." *Commonwealth v. Fisher,* 564 Pa. 505, 522, 769 A.2d 1116, 1126 (2001). "Photographs used in lineups are not unduly suggestive if the suspect's picture does not stand out more than the others, and the people depicted all exhibit similar facial characteristics." *Id.*

 ¶ 34 In the instant case, the computer generated array contains photographs of eight black men who appear to be of similar age and to have similar facial features, hairlines, and facial hair.[6] Although Appellant's neck and shoulders are visible to the greatest extent, we observe that all of the photographs depict the subject's neck and at least three of the other photographs display the subject's shoulders. Despite this slight variation, we do not conclude that Appellant's photograph "stands out" more than the others or makes the array unduly suggestive. *See Fisher, supra.* Upon our conclusion that the photo array was not suggestive and that Appellant's remaining challenges relate to the reliability of the identification alone, we find no basis upon which to disturb the ruling of the trial court.

¶ 35 Judgment of sentence affirmed. Jurisdiction relinquished.

¶ 36 BOWES, J., files Dissenting Opinion.

**DISSENTING OPINION BY BOWES, J.:**

¶ 1 I believe that this appeal is untimely and should be quashed. At Appellant's December 17, 2004 sentencing, he was informed:

> You have ten days from today's date to ask the Court to reconsider your sentence. That must be done in writing.
>
> You have 30 days from today's date to file an appeal to the Superior Court on the grounds that we discussed. That also must be done in writing.

N.T., 12/17/2004, at 83. Appellant's post-trial motions were untimely filed on December 28, 2004. Therefore, the motions were not sufficient to toll the appeal period. *Commonwealth v. Dreves,* 839 A.2d 1122 (Pa.Super.2003) (*en banc*). Appellant had until Tuesday, January 18, 2004, to file his appeal.[7] His February 2, 2005 appeal is untimely and should be quashed. *Id.; see also Commonwealth v. Wrecks,*

---

6. The certified record contains a black and white photocopy of the photo array. Our Court's liaison attempted to obtain the original exhibit from the trial court but was unsuccessful. Because Appellant has not made any specific challenges to the colors of the array, however, the photocopy does not prohibit meaningful appellate review.

7. The last day of the appeal period fell on a Sunday, and the following day was a legal holiday; therefore, Appellant had until that Tuesday to file the appeal. 1 Pa.C.S.A. § 1908.

2007 PA Super 301, 934 A.2d 1287. The violation of Pa.R.Crim.P. 720(B)(4)(a) presented in this case had no impact on the untimeliness of the appeal. Appellant, who knew he had ten days to file post-trial motions, filed those motions in an untimely manner. Furthermore, he already had been informed that he had thirty days from the judgment of sentence to file the appeal. Hence, I believe that *Dreves* remains controlling, that we lack jurisdiction, and that this appeal should be quashed.