J.S43041/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| STEPHANIE ANN BUDIHAS, | : | |
| | : | |
| Appellant | : | No. 3116 EDA 2013 |

Appeal from the Judgment of Sentence April 5, 2013
In the Court of Common Pleas of Northampton County
Criminal Division No(s).: CP-48-CR-0003745-2012

BEFORE: GANTMAN, P.J., ALLEN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED OCTOBER 17, 2014**

Appellant, Stephanie Ann Budihas, appeals from the judgment of sentence entered in the Northampton County Court of Common Pleas following a bench trial and convictions for driving under the influence-high rate of alcohol[1] and failure to stop at a red light.[2] Appellant claims her constitutional rights to a fair trial and due process were violated because a dash camera video of the traffic stop should have been preserved by the Commonwealth. We affirm.

We state the facts as set forth by the trial court:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(b).

[2] 75 Pa.C.S. § 3112(a)(3)(i).

[The lower court] held a bench trial on March 5, 2013. At trial, [the court] heard testimony from Joshua Schnalzer, a police officer employed by the City of Bethlehem. Officer Schnalzer testified he observed Appellant's vehicle accelerate "faster than a normal car would" and weaving within the right lane of travel. Further, Office Schnalzer testified he observed Appellant's vehicle stopped at a red light next to two individuals on the sidewalk and continued to remain stopped through a green cycle on the light. The signal turned red again and it was at that point that the Appellant made a right turn at the intersection, which was marked "No Turn on Red" with two signs. Officer Schnalzer then followed the vehicle and had to speed up to keep up with the vehicle which was driving relatively quickly.

Trial Ct. Op., 1/31/14, at 4-5 (citations omitted). Officer Schnalzer initiated a traffic stop, approached Appellant's vehicle, and noticed Appellant smelled of alcohol and had slightly glassy eyes. The officer had Appellant perform field sobriety tests, which she failed. Appellant eventually underwent a blood test, which revealed a blood alcohol content of .14%.

The officer's police car had a video recording system that does not automatically activate when the emergency lights are on. N.T. Trial, 3/5/13, at 85. The decision whether to activate the video recorder lies within the officer's discretion. *Id.* Once a video is recorded, the officer must request the police department to download and preserve the video or it will eventually be overwritten. *Id.* at 85. In the instant case, the officer did not activate the video recording system or make a request to preserve any video. *Id.* at 85-86. Officer Schnalzer testified that the police department typically does not preserve the tape when there is substantial evidence to

proceed without the tape because of the burdensome process of preserving the tape. *Id.* at 98.

Prior to trial, Appellant requested a copy of any video or audio recording depicting the motor vehicle stop. The Commonwealth notified Appellant that no such recording existed. A bench trial ensued, at which Appellant was found guilty of the above charges. On April 5, 2013, the court sentenced Appellant to thirty days to six months' imprisonment.

On April 12, 2013, Appellant filed a motion for arrest of judgment or a new trial. On May 6, 2013, the court denied that motion but its order did not notify Appellant of her appellate rights. On May 16, 2013, Appellant filed a motion for reconsideration of sentence, which the court denied on October 15, 2013. Appellant filed a notice of appeal on November 13, 2013. Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

As a prefatory matter, we examine the timeliness of this appeal. Pennsylvania Rule of Criminal Procedure 720 governs when a notice of appeal should be filed after disposition of a post-sentence motion:

> **(A) Timing.**
>
> (1) Except as provided in paragraphs (C) and (D), a written post-sentence motion shall be filed no later than 10 days after imposition of sentence.
>
> (2) If the defendant files a timely post-sentence motion, the notice of appeal shall be filed:
>
> > (a) within 30 days of the entry of the order deciding the motion;

> (b) within 30 days of the entry of the order denying the motion by operation of law in cases in which the judge fails to decide the motion; or

> (c) within 30 days of the entry of the order memorializing the withdrawal in cases in which the defendant withdraws the motion.

Pa.R.Crim.P. 720(A)(1)-(2). Thus, a notice of appeal must be filed within thirty days of the order denying a post-sentence motion. *Id.*

Rule 720 also governs the contents of the post-sentence motion:

> **(B) Optional Post-Sentence Motion.**

> (1) *Generally*.

> (a) The defendant in a court case shall have the right to make a post-sentence motion. All requests for relief from the trial court shall be stated with specificity and particularity, and shall be consolidated in the post-sentence motion, which may include:

>> (i) a motion challenging the validity of a plea of guilty or nolo contendere, or the denial of a motion to withdraw a plea of guilty or nolo contendere;

>> (ii) a motion for judgment of acquittal;

>> (iii) a motion in arrest of judgment;

>> (iv) a motion for a new trial; and/or

>> (v) a motion to modify sentence.

Pa.R.Crim.P. 720(B)(1)(a)(i)-(v).

Finally, the order denying a post-sentence motion must conform to Rule 720(B)(4)(a):

> (4) *Contents of Order*. An order denying a post-sentence motion, whether issued by the judge pursuant to

- 4 -

paragraph (B)(3)(d) or entered by the clerk of courts pursuant to paragraph (B)(3)(c), or an order issued following a defendant's withdrawal of the post-sentence motion, shall include notice to the defendant of the following:

(a) the right to appeal and the time limits within which the appeal must be filed . . . .

Pa.R.Crim.P. 720(B)(4)(a). "This requirement ensures adequate notice to the defendant, which is important given the potential time lapse between the notice provided at sentencing and the resolution of the post-sentence motion." *Id.* cmt.; *accord Commonwealth v. Patterson*, 940 A.2d 493, 499 (Pa. Super. 2007).

Instantly, Appellant, after the court denied her post-sentence motion on May 6, 2013, had thirty days within which to file a notice of appeal. *See* Pa.R.Crim.P. 720(A)(1)-(2). Appellant, however, then filed a motion for reconsideration of her sentence on May 16, 2013, and did not file a timely notice of appeal. *See* Pa.R.Crim.P. 720(B)(1)(a)(i)-(v) (stating that all requests for relief must be in post-sentence motion).

We decline to find Appellant filed an untimely appeal because the trial court failed to comply with Rule 720(B)(4)(a) in its May 6, 2013 order. *See* Pa.R.Crim.P. 720(B)(4)(a). The *Patterson* Court's observations aptly apply instantly:

In our view, the trial court's failure to comply with Rule 720 constitutes a breakdown that excuses the untimely filing of Appellant's notice of appeal. . . . Foremost, the use of the word "shall" in Rule 720(B)(4)(a) evinces the mandatory nature of the notification. *See*

> ***Commonwealth v. Pleger***, 934 A.2d 715, 720 (Pa. Super. 2007) (stating "shall" evinces a mandatory obligation). Second, the Comment to the Rule clearly states that Rule 720(B)(4) serves a distinct purpose from Rule 704, namely, to ensure adequate notice to the defendant given the routine delay between the sentencing and the disposition of the post-sentence motion.

***Patterson***, 940 A.2d at 499. Accordingly, we excuse Appellant's untimely appeal from her judgment of sentence. ***See id.***

Appellant raises the following issue on appeal:

> Does the Sixth Amendment right to a fair trial and the due process clause of the Fourteenth Amendment require that a dash cam video produced in connection with a DUI stop be preserved as material evidence?

Appellant's Brief at 4.

We summarize Appellant's argument for her sole issue. She insists that the best evidence of the stop was the video recording. Appellant suggests that the video would have been exculpatory and negate any need by the fact-finder to weigh credibility. She couches her argument as a violation of both ***Brady v. Maryland***, 373 U.S. 83 (1963), and ***Commonwealth v. Snyder***, 963 A.2d 396 (Pa. 2009), because her constitutional rights to a fair trial and due process were violated when the Commonwealth did not preserve and produce the video recording. We hold Appellant has not established entitlement to relief.

With respect to whether ***Brady*** applies to a particular factual scenario, the standard of review is *de novo*, as it is a question of law.

> Under **Brady**, the prosecution's failure to divulge **exculpatory** evidence is a violation of a defendant's Fourteenth Amendment due process rights. "[T]o establish a **Brady** violation, a defendant is required to demonstrate that **exculpatory** or **impeaching** evidence, favorable to the defense, was suppressed by the prosecution, to the prejudice of the defendant."

> The burden of proof is on the defendant to demonstrate that the Commonwealth withheld or suppressed evidence. . . . Similarly, this Court has limited the prosecution's disclosure duty such that it does not provide a general right of discovery to defendants. . . .

**Commonwealth v. Cam Ly**, 980 A.2d 61, 75 (Pa. 2009) (emphases added and citations omitted). In **Cam Ly**, the Commonwealth failed to disclose that a witness identified a different person as the culprit, and our Supreme Court held the prior identification related to that witness's credibility. **Id.** at 76, 78. The Commonwealth also failed to produce a police log stating an unnamed informant identified a third party as the perpetrator, which the **Cam Ly** Court categorized as exculpatory evidence. **Id.** at 79-80. The Court, however, declined to grant relief for other reasons. **Id.**

In **Snyder**, our Supreme Court held that **Illinois v. Fisher**, 540 U.S. 544 (2004), applied to Pennsylvania:

> [T]he [**Fisher**] Court held due process did not require dismissal of charges where the police destroyed evidence of tests performed on cocaine during the ten years the defendant was a fugitive: even though the test results were submitted into evidence and constituted a central component of the prosecution's case, the evidence was only potentially useful to the defendant and it had not been destroyed in bad faith. The [**Fisher**] Court reaffirmed that the critical distinction for purposes of the Constitutional right to preservation of evidence was

between "potentially useful evidence"—evidence "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," . . . and "materially exculpatory evidence." The [**Fisher**] Court [held] "the applicability of the bad-faith requirement . . . depended not on the centrality of the contested evidence to the prosecution's case or the defendant's defense, but on the distinction between 'materially exculpatory' evidence and 'potentially useful' evidence."

[E]ven where destroyed evidence is central to the prosecution's case, a defendant must show bad faith . . . .

**Snyder**, 963 A.2d at 403-04 (citations omitted). Thus, the **Snyder** Court established the following analytical framework:

First, we must determine whether the [evidence at issue was] "materially exculpatory" or "potentially useful." We recognize this is a "treacherous task," requiring a court to "divin[e] the import of materials whose contents are unknown and, very often, disputed." Accordingly, we have required support for an allegation that destroyed evidence was exculpatory, holding it cannot be based on a "mere assertion."

**Id.** at 405 (citations omitted). "While it is very unlikely we could find bad faith where [potentially useful evidence is] destroyed pursuant to standard procedure, evidence destroyed outside a standard procedure is not *ipso facto* destroyed in bad faith." **Id.** at 406 (citation omitted).

Instantly, we agree with the trial court that Appellant did not demonstrate that the video ever existed. **See, e.g.**, N.T. Trial at 85-86. The Commonwealth notified Appellant that no such video existed and Appellant did not refer the trial court to any evidence that the Commonwealth's notification was erroneous. **See Cam Ly**, 980 A.2d at 75.

Furthermore, even if such a video existed, we agree with the trial court that Appellant failed to demonstrate that the video was materially exculpatory, let alone the Commonwealth withheld or suppressed it. **See Cam Ly**, 980 A.2d at 75; **Snyder**, 963 A.2d at 405. Moreover, assuming the video was potentially useful, we also agree with the trial court that Appellant did not establish bad faith because it was not preserved as a matter of standard procedure. **Cf. Snyder**, 963 A.2d at 402, 406 (holding determination of bad faith unlikely when potentially useful evidence destroyed pursuant to standard procedure). Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2014