J-S34034-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                              :        PENNSYLVANIA
                              :
            v.                :
                              :
                              :
                              :
TROY A. DEW                   :
                              :
        Appellant             :    No. 1481 WDA 2022

Appeal from the Judgment of Sentence Entered September 8, 2022
In the Court of Common Pleas of Warren County
Criminal Division at CP-62-CR-0000369-2021

BEFORE:  LAZARUS, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                **FILED: October 5, 2023**

Troy A. Dew (Appellant) appeals the judgment of sentence imposed

following his convictions of indecent assault and summary harassment.[1]  We

affirm.

The trial court summarized the underlying facts as follows:

On July 2, 2021, both [Appellant] and the victim attended the
funeral of a mutual relative.  The victim rode in [Appellant's] car
from the funeral service to the location of the dinner.  [Appellant]
stopped at his apartment claiming that he needed to retrieve his
vape.  [Appellant] asked the victim to help him catch a stray cat
in his apartment.  After the victim entered [Appellant's] studio
apartment, [Appellant] grabbed the victim's breasts and said[,]
"has a man ever touched you like this before?" [Appellant] began
to pull the victim's skirt and underwear down before the victim
turned around and left [Appellant's] apartment.  The victim and
[Appellant] then drove together to the location of the dinner.  The
victim spoke to her grandmother about this incident at around 5

_____

[1] **See** 18 Pa.C.S.A. §§ 3126(a)(1), 2970(A)(1).

p.m., and the victim also reported the incident to the police on the evening of July 2, 2021.

Trial Court Opinion, 12/19/22, at 1-2 (unnumbered).

The Commonwealth charged Appellant with the above offenses. On April 13, 2022, a jury convicted Appellant of indecent assault, and the trial court convicted him of summary harassment. On September 8, 2022, the trial court sentenced Appellant to an aggregate 12 months plus 45 days to 24 months plus 90 days of incarceration.[2] On September 15, 2022, Appellant filed a counseled post-sentence motion claiming the verdict was against the weight of the evidence. On September 19, 2022, while the post-sentence motion was pending, Appellant filed a *pro se* "Motion for Direct Appeal." The trial court denied Appellant's post-sentence motion on December 2, 2022. In its order, the trial court found Appellant's motion for direct appeal to be "premature," and deemed it filed on December 2, 2022. Trial Court Order, 12/2/22.

Notwithstanding the trial court's order, Pennsylvania Rule of Criminal Procedure 720 provides, "If the defendant files a timely post-sentence motion, the notice of appeal shall be filed within 30 days of the entry of the order deciding the motion." Pa.R.Crim.P. 720(A)(2)(a). "No direct appeal may be

---

[2] The court also determined that Appellant was a sexually violent predator.

taken by a defendant while his or her post-sentence motion is pending." *Id.* cmt.

On February 14, 2023, this Court directed Appellant to show cause why his appeal should not be quashed as a nullity. Counsel timely filed a response, with a copy of the trial court's December 2, 2022 order attached. This Court discharged the rule on February 24, 2023, but cautioned that the merits panel may revisit the issue.

Appellant's appeal is facially untimely. However, Pennsylvania Rule of Criminal Procedure 720(B)(4)(1) requires that an order denying a post-sentence motion advise the defendant of the right to appeal and the applicable time limits. This Court has held that a breakdown occurs "in instances where the trial court, at the time of sentencing, either failed to advise [the a]ppellant of his post-sentence and appellate rights or misadvised him." *Commonwealth v. Patterson*, 940 A.2d 493, 498 (Pa. Super. 2007). We have stated that a "trial court's failure to comply with Rule 720 constitutes a breakdown that excuses the untimely filing of [an a]ppellant's notice of appeal." *Id.* at 500.

Here, the trial court did not adhere to Rule 720, and it failed to advise Appellant of his appeal rights and applicable time limits. Further, Appellant's counsel relied on the December 2, 2022 order deeming Appellant's appeal to be timely filed. Because of the breakdown, we excuse Appellant's untimely filing.

Appellant presents the following issue:

Did the trial court err in denying Appellant's post-sentence motion for a new trial based on the verdict being against the weight of the evidence?

Appellant's Brief at 5.

Appellant argues, "The alleged victim's testimony at trial was so inconsistent … that the jury's verdict must have been against the weight of the evidence." Appellant's Brief at 9. Appellant points to inconsistencies between the victim's statement to police on the night of the incident and her trial testimony. For example, Appellant claims the victim initially told police that Appellant had invited her to ride with him from the cemetery; she testified at trial that she had approached Appellant and asked him for a ride. *Id.* The victim told police Appellant pulled up her skirt, and pulled down her underwear; she testified at trial that Appellant had pulled down both her skirt and underwear. *Id.* The victim told police that Appellant later approached her at the luncheon following the incident; she testified she had no further contact with Appellant after arriving at the luncheon. *Id.* at 9-10.

Appellant also claims defense witness Spring Clark (Clark) disputed the victim's trial testimony. *Id.* at 10. Clark testified that she saw Appellant and the victim leaving Appellant's apartment after the alleged incident. *Id.* Clark stated she heard the victim say, "that's a really nice kitty." *Id.* (citation omitted). The victim testified that she had no interaction with Clark after the

incident. *Id.* Based on this testimony, Appellant asserts "the jury's verdict must have been against the weight of the evidence." *Id.*

"The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted). The fact-finder is solely responsible for resolving contradictory testimony. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). We cannot substitute our judgment for that of the trier of fact. *Talbert*, 129 A.3d at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying a post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. *Id.* at 545-46. "In order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* at 546 (citation omitted). Reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

A person is commits indecent assault

if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person … for the purpose of arousing sexual desire in the person or the complainant and:

- 5 -

**(1)** the person does so without the complainant's consent[.]

18 Pa.C.S.A. § 3126(a)(1).

The victim testified at trial that on July 2, 2021, she attended a family member's funeral. N.T., 4/13/22, at 40. Prior to the funeral, the victim did not know Appellant "very well." *Id.* at 41. At the funeral, the victim "waved and saw that [Appellant] was under distress …." *Id.* The victim explained,

> I saw [Appellant] was taking it really hard. So we had all finished the funeral and went out to go up to bury him and I was like, grandma, I think I'm going to go ride with him, he's distressed, it's not safe to be riding in a vehicle alone like that.

*Id.* The victim rode with Appellant to the cemetery and, after the burial, told Appellant she would ride back with him. *Id.* at 42. The victim testified, "And he's like, okay, I've got to stop at my house to grab my vape." *Id.*

> And then he's like, are you good with cats? I have a stray cat in my apartment, I'm trying to get it out of hiding.
>
> Sure I can do that, you know, nothing big, and then I had went in and he had c[o]me in. He had grabbed his vape, walked out onto his balcony[,] and hit his vape for a few minutes while I was trying to get this cat out of hiding. When he came back in, I was getting ready to walk out because I told him that the cat was growling and I'm not chancing getting bit or scratched by the cat.
>
> At that moment is when he walked up behind me, placed both of his hands on my breasts and … then that moment is when he had taken his right hand off my breast and took it down my body and started pulling down my skirt and my underwear, and then I had spun around and got away and ran out of his apartment and got into his car, and then we went down to the dinner at that time and sat back with my family.

*Id.* at 42-43. Upon arriving at the luncheon, the victim joined her grandparents. *Id.* at 52. She denied having any further interaction with Appellant. *Id.*

The victim testified she reported the incident to the Pennsylvania State Police at about 11:58 p.m. that night. *Id.* at 55. The victim confirmed Pennsylvania State Trooper Joshua Nordin's written report that she had agreed to ride with Appellant to the cemetery. *Id.* at 56. The victim explained, "[Appellant] did not ask me. I asked him if he wanted me to ride with him." *Id.*

The victim disputed the part of the written statement indicating Appellant had used the restroom while at the apartment. *Id.* at 57. The victim testified, "I don't remember stating anything about [Appellant] saying anything about using the restroom." *Id.* The victim also disputed telling Trooper Nordin that Appellant had pulled her skirt up. *Id.* She clarified that Appellant had pulled her skirt and underwear "down." *Id.*

The trial court addressed the inconsistencies in the testimony:

> [Appellant] alleges that the victim's testimony was inconsistent with the [Trooper's] testimony and was contradicted by [] Clark's testimony. Clark testified that she was only one minute behind the [Appellant's] car. However, Clark claimed that she spent a few minutes retrieving something out of a medicine cabinet after she arrived at her home next to [Appellant's] studio apartment. Clark also alleged that she saw the victim leave the [Appellant's] apartment smiling and that the victim spoke to her about the cat in the apartment. In the victim's rebuttal testimony, the victim stated that she never saw Clark or Clark's car behind them. The victim testified that she never saw Clark at [Appellant's] apartment, and that after the funeral service[,] she

did not see Clark until later that day during the next part of the funeral.

[Appellant] also asserts that the victim's testimony is inconsistent with the testimony of [Trooper] Nordin. The [trooper] interviewed the victim before midnight on July 2, 2021. [Trooper] Nordin later interviewed [Appellant] between 1 and 2 a.m. on July 3, 2021. **The [trooper] testified that he believed there were no inconsistencies between the victim's in[-]court testimony and her testimony on July 2, 2021, and that all discrepancies in the officer's report of her interview were due to the officer writing the report at 3 a.m.** However, the [trooper] did note discrepancies during [Appellant's] interview. [Appellant] initially reported that he only entered his apartment for two minutes to retrieve a vape. Later in the interview, he claimed that he had a five-to-ten-minute conversation with the victim before leaving his apartment.

The jury was free to determine the credibility of each witness at trial, and they determined that the victim's testimony of her assault to be credible. The [trooper's] testimony was not inconsistent with the victim's testimony[,] as [Trooper] Nordin clarified that any discrepancy between the report and the victim's testimony was due to his own error ….

Trial Court Opinion, 12/19/22, at 3-4 (unnumbered) (emphasis added). The court thus rejected Appellant's challenge to the weight of the evidence. *Id.* at 5 (unnumbered).

Appellant asks this Court to reassess the jury's credibility determinations and reweigh the evidence presented at trial. We cannot and will not do so. *See Talbert*, 129 A.3d at 546. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict is not so contrary to the evidence as to shock the conscience. Accordingly, the trial court did not abuse its discretion. *See id.*

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

10/5/2023