J-S11005-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH WILLIAM BETHA | : | |
| | : | |
| Appellant | : | No. 161 WDA 2025 |

Appeal from the Judgment of Sentence Entered August 19, 2024
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0006997-2023

BEFORE: LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY STABILE, J.: **FILED: May 26, 2026**

Appellant, Joseph William Betha, appeals from his aggregate judgment of sentence of 3½ - 8 years' imprisonment for accidents involving death or personal injury, homicide by vehicle, accident involving death or personal injury-not properly licensed, involuntary manslaughter, reckless driving and driving without a license. We affirm.

The trial court summarized the evidence adduced during Appellant's trial as follows:

> The Commonwealth's case was largely undisputed. Appellant did not contest he was the operator of the vehicle or that he was driving around 75 mph at the time of impact, resulting in the death of Freeman Holeman. To that end, the parties reached several stipulations regarding trial evidence which are detailed below.
>
> On April 11, 2023, City of Pittsburgh Police Detective Ronald Wolfe, an expert in collision and crash reconstruction, responded to a fatal hit and run between a vehicle and pedestrian on Penn Avenue. He testified that the incident occurred around 10:00 p.m. and he arrived shortly before 11:00 p.m. The suspect vehicle was

no longer on scene. The deceased victim, Freeman Holeman, was lying in the roadway and his left arm had been severed from his body. The parties stipulated to the findings of the autopsy report which determined Holeman died from blunt force trauma to the head, neck, torso and extremities.

On scene, Detective Wolfe interviewed Tre Roberson. This testimony was presented at trial through stipulation. Roberson detailed the events leading up to the fatal incident. He reported that on the evening of April 11, 2023, he was driving his motorcycle behind a minivan on Penn Avenue in the City of Pittsburgh. The driver of the minivan was later identified as Appellant. Roberson believed Appellant was trying to race him because Appellant drove at high rates of speed between traffic lights. Immediately prior to the accident both Appellant and Roberson were stopped at a traffic light near the Evergreen Cafe. As soon as the light turned green, Appellant again drove off at a high rate of speed.

Detective Wolfe testified his observations of the scene were consistent with a high-speed collision. The debris field, which included not only vehicle damage but the injury suffered by Holeman, stretched upwards of one hundred five (105) feet from the accident scene. He opined that given the size of the debris field, the condition of the victim's body, along with the available surveillance footage, Appellant was driving between 75 to 78 mph at the moment of impact. This stretch of Penn Avenue is a four (4) lane road with a posted speed limit of 35 mph.

Police identified, and subsequently recovered, Appellant's vehicle which had obvious damage. The majority of the damage was to the right side of the vehicle: a missing turn signal light; buckled right front fender; missing right-side mirror; broken rightrear window; and missing trim. The front also sustained damage. The right side of the front windshield was broken, the body was missing paint and had scuff marks, and the front bumper was dislodged. Detective Wolfe testified the damage observed to Appellant's vehicle was consistent with debris recovered on scene. From this evidence, Detective Wolfe was able to opine at the time of initial impact, Holeman's head struck the right side of Appellant's windshield. From there, his body traveled along the right side of the vehicle, causing the damage described above. After Holeman's body impacted with the roadway it slid a

significant distance, approximately fifty (50) feet, as evidenced by the trail of blood and other bodily fluids that illustrated the path.

Both Roberson's stipulated testimony and the opinion of Detective Wolfe were corroborated by footage captured by surveillance cameras located across the street from the Evergreen Cafe at 7325 Penn Avenue. The cameras overlook a five (5) spaced surface parking lot, four lanes of Penn Avenue and part of a nearby intersection. Collectively, the videos depict[ed] Holeman park[ing] his vehicle across from the Evergreen Cafe at 10:24 p.m. Holeman then crosse[d] the street and appear[ed] to enter a building as he walks out of frame. At 10:29 p.m.[,] Holeman re-enter[ed] the frame at the same location where he was observed minutes before. He [stood] on the sidewalk for approximately six (6) seconds before stepping out onto the street. Four (4) vehicles [drove] by in the opposite direction. Almost immediately after clearing the right-hand lane, Holeman [was] struck by Appellant's vehicle[,] which [was] traveling at an extremely high rate of speed. The brake lights [] engaged as Appellant [drove] through the intersection. Simultaneously, Holeman's body trail[ed] behind Appellant's vehicle, striking the roadway whereafter it slid a considerable distance to its final resting place.

On April 13, 2023, Appellant arranged through an attorney to meet with police and provide a statement regarding the fatal hit and run that occurred the day before. Approximately an hour later, Appellant and his counsel met with both Detective Wolfe and City of Pittsburgh Homicide Detective Robert Shaw at a hotel in downtown Pittsburgh. The conversation was captured on Detective Wolfe's body worn camera (BWC) and played at trial. The detectives approached the table where Attorney Raiford and Appellant were already seated and advised Appellant that the interaction was being recorded. Appellant was not Mirandized at the request of counsel. During the seventeen (17) minute interview Appellant offered his version of the events. He stated he grew up in the area and is very familiar with Penn Avenue. He explained that as he approached the Evergreen Cafe he heard his back window "pop." He believed it was caused by gunfire, so he continued to drive. During the drive he noticed his right rearview mirror was missing and after further inspection when he arrived home, he observed significant damage to the right side of his vehicle. Using his phone, Attorney Raiford showed the detectives

- 3 -

pictures of the damage. The interview concluded with detectives making arrangements to obtain the keys to Appellant's vehicle.

Appellant's certified driving record was admitted by way of stipulation. It revealed that Appellant only had a Pennsylvania Identification Card on the date of the offense. This was consistent with Appellant's admission to police that his driver's license was expired. [Appellant] rested without presenting any testimony or evidence.

Trial Court Opinion, 6/24/25, at 2-7 (citations omitted; cleaned up).

Following a non-jury trial, the court found Appellant guilty of the charges listed above. On August 19, 2024, the court entered sentence. On August 29, 2024, Appellant filed timely post-sentence motions.

The 120-day period for decision on Appellant's post-sentence motion expired on December 29, 2024. **See** Pa.R.Crim.P. 720(B)(3)(a) (post-sentence motions are deemed denied if court fails to decide them within 120 days after filing). The clerk of courts, however, did not enter an order deeming the motion denied until January 8, 2025. Thirty days later, on February 7, 2026, Appellant filed a notice of appeal to this Court.

We have held that a breakdown in the operations of the court occurs when the court fails to enter a timely order denying the defendant's post-sentence motions by operation of law. **Commonwealth v. Gore**, 2021 WL 2287485, *1 n.4 (Pa. Super., Jun. 1, 2021) (unpublished memorandum)[1] (citing **Commonwealth v. Patterson**, 940 A.2d 493, 499 (Pa. Super. 2007)). When such a breakdown occurs, the thirty-day appeal period begins running

---

[1] **See** Pa.R.A.P. 126(b) (non-precedential memorandum of this Court filed after May 1, 2019 may be cited for its persuasive value).

on the date of the untimely order, and we will exercise jurisdiction over an appeal filed within the appeal period.  *See*, *e.g.*, *Commonwealth v. Annable*, 2025 WL 3772144, *2 (Pa. Super., Dec. 31, 2025) (unpublished memorandum), *Commonwealth v. Braykovich*, 664 A.2d 133 (Pa. Super. 1995) (notice of appeal was timely because it was filed within thirty days of untimely order denying post-sentence motion).  In this case, Appellant appealed to this Court within thirty days of the untimely order denying his post-sentence motions.  Thus, under the above authorities, we will exercise jurisdiction over this appeal.

Both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant raises a single issue on appeal, "Whether the evidence was insufficient to convict [Appellant] of Accidents Involving Death or Personal Injury where the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] knew or should have known he hit a person?"  Appellant's Brief at 6.

When reviewing a challenge to the sufficiency of the evidence, our standard is

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be

drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 206 A.3d 551, 557 (Pa. Super. 2019).

In relevant part, the Vehicle Code defines the offense of accidents involving death or personal injury as follows:

The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in any event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S.A. § 3742(a). If the victim dies due to a violation of this provision, the offense constitutes a second-degree felony that carries a mandatory minimum sentence of three years' imprisonment. 75 Pa.C.S.A. § 3742(b)(3)(i).

To prove a violation of Section 3742(a), the Commonwealth must prove that the driver "knew or should have known that he was involved in an accident involving personal injury or death." *Commonwealth v. Lowry*, 55 A.3d 743, 751 (Pa. Super. 2012);[2] *Commonwealth v. Lowry*, 819 A.2d

_____

[2] In *Lowry*, we held that the evidence was sufficient to show that the defendant knew or should have known that he had been involved in an
*(Footnote Continued Next Page)*

- 6 -

1198, 1204-06 (Pa. Super. 2003) (lengthy analysis that Section 3742 has *mens rea* element requiring proof that defendant knew or should have known he was involved in accident involving injury or death).

Appellant argues that he did not know, and should not have known, that he was involved in an accident. According to Appellant, he "didn't think he hit anything at all. Rather as he explained to police, due to the simultaneous shattering of the passenger side windows of his van, and the fact that he didn't see anything in the road or on the sidewalk, he thought he was being shot at, which is why he continued to drive after impact." Appellant's Post-Sentence Motions, 8/29/24, at 6.

Appellant's argument fails because he applies the wrong standard to the evidence. As stated above, we are required to construe the evidence in the light most favorable to the Commonwealth. *Smith*, 206 A.3d at 557. Moreover, the trial court, as factfinder, is free to believe all, part, or none of the evidence. *Id.* Appellant, however, construes the evidence in the light most favorable to himself by asking us to accept his self-serving explanation that he thought someone was shooting at him.

_____

accident, because witnesses testified that he pulled into traffic and very nearly collided with two oncoming vehicles, that his vehicle was forced to move so quickly that his tires spun and emitted smoke, and that other vehicles lost control and caused a very loud collision that threw debris in all directions. *Id.*, 55 A.3d at 752.

Viewed in the light most favorable to the Commonwealth, the evidence demonstrates an eyewitness, Roberson, testified that immediately before the accident, he saw Appellant drive away from a traffic light near the Evergreen Cafe at a high rate of speed. Detective Wolfe, an accident reconstruction expert, testified that the accident scene had multiple indicia of a high-speed accident. The victim's left arm was severed from his body. He died from blunt force trauma to the head, neck, torso and extremities. Appellant's vehicle had significant damage. Its right side had a missing turn signal light, a buckled right front fender, a missing right-side mirror, a broken right-rear window, and missing trim. The front was damaged as well. The right side of the front windshield was broken, the body was missing paint and had scuff marks, and the front bumper was dislodged. Given the size of the debris field (105 feet), the condition of the victim's body, and the surveillance footage of the collision, Detective Wolfe opined that Appellant was driving between 75 to 78 mph at the moment of impact, approximately forty miles per hour over the speed limit. The victim's head struck the right side of Appellant's windshield. From there, his body traveled along the right side of the vehicle, then struck the road, and slid another fifty feet.

This evidence clearly was sufficient to demonstrate beyond a reasonable doubt that Appellant knew or should have known that he was involved in an accident. Thus, his challenge to the sufficiency of the evidence is devoid of merit.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

5/26/2026