J-S51019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LATONYA GIBSON | |
| Appellant | No. 2212 MDA 2013 |

Appeal from the Judgment of Sentence November 1, 2013
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0003010-2013

BEFORE: BOWES, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 24, 2015**

Latonya Gibson appeals from the judgment of sentence imposed on November 1, 2013, in the Court of Common Pleas of Berks County, made final by the denial of post-sentence motions on November 18, 2013. On October 22, 2013, the trial court, sitting without a jury, convicted Gibson of driving under the influence of alcohol ("DUI") (incapable of safe driving – first offense), DUI (imbibed .16% or higher), accidents involving damage to attended vehicle or property, and one-way roadways and rotary traffic islands.[1] Contemporaneous with this appeal, counsel for Gibson filed a petition to withdraw from representation pursuant to ***Anders v. California***,

---

[1] 75 Pa.C.S. §§ 3802(a)(1), 3802(c), 3743(a), and 3308(b), respectively.

386 U.S. 738 (1967),[2] and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). The issues identified in the **Anders** brief are sufficiency and weight challenges. After a thorough review of the submissions by the parties, the certified record, and relevant law, we grant counsel's motion and affirm the judgment of sentence.

The trial court set forth the factual history as follows:

> On April 13, 2013[,] at approximately 11:06 P.M., Officer Bradley T. McClure was dispatched to the 500 block of Avenue A for a hit and run in progress. When Officer McClure arrived at the location, the victim, Michael Mieczkowski told the Officer that the person who struck him entered a residence on the block. The residence was 641 Avenue A, and the victim described the driver as a black woman wearing a shawl. Officer McClure knocked on the door and saw the woman matching the description sitting on the couch. Officer McClure asked the Defendant (Latonya Gibson) to come outside. When [Gibson] came outside, the Officer noticed a strong smell of alcohol on her immediately.
>
> Officer McClure asked [Gibson] if she had been driving a car that night. [Gibson] replied and said "yes." He asked her how long ago did [she] drive. [Gibson] said about 30 minutes ago. Officer McClure asked [Gibson] for identification, she had no identification on her and would not give her name or address. [Gibson] asked what was the problem and Officer McClure explained to her that she was suspected of being a driver in a hit [and] run accident. [Gibson] denied being the driver. Officer McClure advised [her] to speak the truth during his investigation. [Gibson] complied and gave the Officer her name and address.
>
> Officer McClure then proceeded to converse with the victim about the accident and to confirm the identity of the driver. Mr. Mieczkowski (victim) explained the accident in detail of how the

---

[2] **See also Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981).

Chevy Blazer struck a parked car and then continued to hit the front of his vehicle. Mr. Mieczkowski decided to follow the vehicle. During his pursuit, Mr. Mieczkowski watched the Chevy Blazer park on the 500 block of Avenue A and saw [Gibson] exit the vehicle to enter a residence. He then called the police and waited [for] Officer McClure to arrive.

Officer McClure went back to [Gibson] and asked her if she owned a vehicle. She said yes and showed Officer McClure where her vehicle was located. Officer McClure observed a Chevy Blazer with damage and paint transfer along the passenger side of the car. During the conversation with [Gibson], Officer McClure testified that she seemed very confused and uncooperative. After some time, she agreed to perform the [standardized field sobriety tests]. [Gibson] failed all tests given to her. [Gibson] was arrested for DUI and was taken to the DUI center. [Gibson] was read the implied consent form and agreed to have her blood drawn at 12:31 A.M. [Gibson]'s blood alcohol level was 0.263%.

Trial Court Opinion, 4/23/2014, at 2-3.

As noted above, a bench trial was held on October 18, 2013, and continued on October 22, 2013. The court found Gibson guilty on all four counts. On November 1, 2013, the court imposed a mandatory minimum sentence of 72 hours to 6 months' incarceration for the DUI (imbibed .16% or higher) conviction, plus a concurrent term of one year of probation for the accidents involving damage to attended vehicle or property offense.[3] Gibson

_____

[3] The court did not impose any further sentences on the remaining convictions.

filed post-sentence motions, which were denied following a hearing on November 18, 2013. This appeal followed.[4]

Preliminarily, we must address counsel's petition to withdraw. When counsel files a petition to withdraw and accompanying *Anders* brief, we must first examine the request to withdraw before addressing any of the substantive issues raised on appeal. *Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007). Here, our review of the record reveals that counsel has substantially complied with the requirements for withdrawal outlined in *Anders*, *supra*, and its progeny. Specifically, counsel filed a petition for leave to withdraw, in which she states her belief that the appeal is frivolous, filed an *Anders* brief pursuant to the dictates of *Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009), furnished a copy of the *Anders* brief to Gibson, and advised Gibson of her right to retain new counsel or proceed *pro se*. *Commonwealth v. Ferguson*, 761 A.2d 613, 616 (Pa. Super. 2000). Moreover, our review of the record reveals no additional correspondence from Gibson. Accordingly, we will proceed to examine the record and make an independent determination of whether the appeal is wholly frivolous.

---

[4] On January 15, 2014, the court ordered Gibson to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Gibson's counsel filed a statement of intent to file an *Anders* brief in lieu of a concise statement. *See* Pa.R.A.P. 1925(c)(4). The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 23, 2014, and an amended opinion on April 25, 2014.

The first issue identified in the **Anders** brief is whether the evidence was sufficient to support all of Gibson's convictions. **Anders** Brief at 14. With respect to her DUI convictions, Gibson claims the Commonwealth failed to prove that "(i) that she drove, operated or was in actual physical control of the movement of the Blazer, and (ii) that she consumed a sufficient amount of alcohol prior to operating her vehicle." **Id.** at 15. Moreover, she states the Commonwealth "relied on Mieczkowski's description of the alleged driver's attire, behavior, and actions during and following the alleged accident to establish that Gibson drove her vehicle and was intoxicated before she entered her friend's home," but claims this evidence "was insufficient to establish that she drove the vehicle after imbibing a sufficient amount of alcohol to either render her incapable of safe driving, or to have caused her blood-alcohol concentration to be at least 0.16 percent within two hours after she drove." **Id.** at 15-16. With respect to the remaining crimes, Gibson again argues the Commonwealth failed to establish her identity as the driver of the Blazer. She states "Mieczkowski's observation that the driver of the vehicle wore dark-colored pants was disaffirmed by Officer McClure's observation, and City of Reading Central Processing photographs, that Gibson wore light-colored pants." **Id.** at 17.

Our review of a challenge to the sufficiency of the evidence is well-established:

> [W]e evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the prosecution the

- 5 -

benefit of all reasonable inferences to be drawn from the evidence. "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. Moreover, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented.

***Commonwealth v. Taylor***, 33 A.3d 1283, 1287-1288 (Pa. Super. 2011)

(internal citations omitted), *appeal denied*, 47 A.3d 847 (Pa. 2012).

Gibson's argument focuses largely on an allegation that the evidence failed to identify her as the driver of the car in question. To this extent, we are also guided by the following:

"[E]vidence of identification need not be positive and certain to sustain a conviction." Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, "any indefiniteness and uncertainty in the identification testimony goes to its weight."

***Commonwealth v. Orr***, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*)

(internal citations omitted), *appeal denied*, 54 A.3d 348 (Pa. 2012).

The DUI crimes are codified, respectively, at 75 Pa.C.S. § 3802(a)(1)

and (c). In pertinent part, these subsections provide:

(a) *General impairment*.

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

…

(c) *Highest rate of alcohol.* -- An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S § 3802.[5]

_____

[5] In **Commonwealth v. Toland**, 995 A.2d 1242 (Pa. Super. 2010), *appeal denied*, 29 A.3d 797 (Pa. 2010), a panel of this Court explained the element of "driv[ing], operat[ing] or be[ing] in actual physical control," as follows:

"The term 'operate' requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion." **Commonwealth v. Johnson**, 833 A.2d 260, 263 (Pa.Super. 2003). "Our precedent indicates that a combination of the following factors is required in determining whether a person had 'actual physical control' of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle." **Commonwealth v. Woodruff**, 447 Pa.Super. 222, 668 A.2d 1158, 1161 (1995). A determination of actual physical control of a vehicle is based upon the totality of the circumstances. **[Commonwealth v.] Williams**, [871 A.2d 254], 259 [(Pa.Super. 2005)]. "The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle." **Johnson, supra** at 263.

*(Footnote Continued Next Page)*

The crime of accidents involving damage to attended vehicle or property is defined as follows:

> (a) *General rule*. -- The driver of any vehicle involved in an accident resulting only in damage to a vehicle or other property which is driven or attended by any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S. § 3743(a). Lastly, a violation of one-way roadways and rotary traffic islands is set forth as follows:

> (a) *Establishment and marking*. -- The department and local authorities with respect to highways under their respective jurisdictions may designate any highway, roadway, part of a roadway or specific lanes upon which vehicular traffic shall proceed in one direction at all or such times as shall be indicated by official traffic-control devices.
>
> (b) *Driving on one-way roadway*. -- Upon a roadway designated for one-way traffic, a vehicle shall be driven only in the direction designated at all or such times as shall be indicated by official traffic-control devices.

75 Pa.C.S. § 3308.

Here, the trial court concisely stated that it found the Commonwealth had "presented sufficient evidence to establish guilt beyond a reasonable doubt with respect to all counts." Trial Court Opinion, 4/23/2014, at 5.

---

*(Footnote Continued)* _____

**Id.** at 1246 (citation omitted).

Our review of the record reveals ample support for the trial court's conclusion. At the bench trial, the victim, Mieczkowski, testified that he was driving on Mineral Spring Road, Berks County, Pennsylvania, when he observed a blue Chevy Blazer coming upon him "very rapidly." N.T., 10/18/2013, at 5. He then moved into the right lane of traffic, let the Blazer pass him, and began to follow the vehicle. He testified that the driver, subsequently identified as Gibson, was operating the Blazer "erratically," in which"[t]here were two or three incidents where cars were being passed at, nearly forced into the parked cars." *Id.* at 7. Mieczkowski stated he then "heard the sound of a collision, and [he] saw parts coming down the street." *Id.* He observed the Blazer's right side strike several parked cars. *Id.* Mieczkowski began to take down the license plate number and called 9-1-1. He testified the driver then turned right on 4th Street, in the wrong direction. *Id.* at 8. Shortly after realizing that he or she was traveling the wrong way, the Blazer then began to back up and hit in the front end of Mieczkowski's car, causing $530.00 worth of damage. *Id.* Mieczkowski stated the Blazer then turned right on 3rd Street, continuing at a high rate of speed, turning left onto Walnut Street, which again was going in the wrong direction, and eventually making its way to the Glenside Homes apartment complex. *Id.* 8-9. Mieczkowski observed the following: (1) the Blazer parked on the left hand side of Avenue A; (2) a group of four to five people stood by the car; and (3) after ten minutes, a woman, Gibson, got out of the driver's side of

the vehicle. *Id.* at 10. He did not see anyone else get in or come out of the car. *Id.* at 11. Mieczkowski testified Gibson went into an apartment and she "was staggering and she had fallen down once or twice." *Id.* at 12. He stated she was wearing a "shawl" top, jeans, and a bandana. *Id.* at 10, 13. Mieczkowski then waited for the police to respond, which took approximately 20 minutes. *Id.* at 24.

Officer Bradley McClure of the Reading City Police Department testified that he arrived at the scene, and he quickly spoke with Mieczkowski, who described the driver and said that she was wearing a shawl. *Id.* at 29. Mieczkowski then informed the officer that Gibson went into a house and indicated that it was "#461." *Id.* The officer proceeded to that residence, knocked on the door, and went inside. He saw Gibson seated on the couch, wearing a shawl and jeans. *Id.* at 30. Both the officer and Gibson then went outside, and he informed Gibson that he was investigating a "hit and run." *Id.* at 31. Officer McClure testified Gibson said "she had driven a car 30 minutes previously," but denied involvement in any hit and run. *Id.* at 31. He stated he asked for her name and Gibson initially did not want to give him that information, but later cooperated after he informed her that it was in her best interests to do so. *Id.* The officer observed that Gibson "smelled very badly of alcohol and her speech, like some of the things she was saying, her speech was all over the place." *Id.* He also noticed her eyes were bloodshot. *Id.*

Officer McClure then went to interview Mieczkowski. After speaking with the victim, he asked Gibson to show him where her car was parked. *Id.* at 32. She took him to the car, which was a dark-colored Chevy Blazer. *Id.* at 33. The officer began to walk around the vehicle and when he looked at the passenger side, he "noticed there w[ere] minor dents and scratches and there was paint transfer on the passenger side. And also the side-view mirror was broken and hanging there by … the wires." *Id.* at 34. Officer McClure asked Gibson when she purchased the car and was it in good condition when she got it. Gibson replied that she bought the car three months earlier, and that it was in "good condition." *Id.* When the officer showed her the passenger side, Gibson said that it "was like that when [she] bought it." *Id.* Officer McClure testified that during this time, he "noticed when she walking[,] she was swaying. She [wa]s stumbling around." *Id.* The officer then had Gibson perform several field sobriety tests, in which she failed the "finger-to-nose" and "walk-and-turn" tests. *Id.* at 36.[6] Based on the circumstances, Officer McClure testified he suspected Gibson was under the influence of alcohol and arrested her. *Id.* at 37-38.

The parties stipulated that after her arrest, Gibson was taken to the hospital for her blood to be analyzed at 12:31 a.m. on April 14, 2013. Her

---

[6] Contrary to the trial court's indication in its factual history, the officer testified Gibson did pass the "one-legged stand" test. *Id.* at 37.

blood alcohol content ("BAC") was determined to be 0.263. *Id.* at 40; *see* Commonwealth's Exhibit 1, Stipulation, 10/18/2013, at 1-2.[7]

Gibson also took the stand at trial. She testified that she owned a green Chevy Blazer. N.T., 10/22/2013, at 15-16. She stated that she was not driving her car on the night in question and there was a "possibility" that her friend, Jasmine Rivera, was driving the Blazer that night. *Id.* at 16. Gibson testified that she had been at her girlfriend's house on Avenue A for approximately an hour before Office McClure arrived, and that is when she had two to three mixed drinks. *Id.* at 18.[8]

Viewing the record in the light most favorable to the Commonwealth as the verdict winner, there was sufficient evidence to support Gibson's convictions. Mieczkowski made a positive and unequivocal identification of Gibson as the driver of the Blazer. The trial court found Mieczkowski's testimony credible, as was its prerogative as fact finder. *See Taylor*, 33 A.3d at 1287-1288; *see also Commonwealth v. Patterson*, 940 A.2d 493, 502 (Pa. Super. 2007) (a positive and without qualification

---

[7] The officer also went to Chestnut Street, where Mieczkowski had stated that he heard a collision and saw parts coming down the street. N.T., 10/22/2013, at 8. The officer testified he did not observe any parts in the street. *Id.*

[8] Counsel for Gibson introduced into evidence a picture of Gibson allegedly taken on the night of the accident. *Id.* at 20. In the picture, she wore "[w]hite saggy pants," "a red tank top and a black and white shawl." *Id.* There was no date on the picture. *Id.*

identification by one witness is sufficient for conviction). Moreover, Gibson was observed hitting several parked cars, going the wrong way down several streets, and backing into Mieczkowski's car and damaging it. When Mieczkowski followed Gibson to her final destination, Gibson was in the driver's seat and there were no signs of another person in the Blazer. After Gibson exited her car, Mieczkowski saw that she exhibited signs of intoxication. When Officer McClure arrived twenty minutes later, Gibson still displayed signs of intoxication. A blood test was taken within two hours of driving, as required by statute, and Gibson was determined to have a BAC of 0.263%. The trial court was free to reject Gibson's account of the night in question, in which she stated she had not been driving that night and the damage to her car was there previously. **See Taylor**, **supra**. Therefore, we conclude there was sufficient evidence to establish that Gibson was, indeed, the driver of the Blazer that damaged Mieczkowski's car, she "operated" or had "actual physical control" of the car, and she had imbibed a sufficient amount of alcohol that rendered her incapable of safe driving. Accordingly, her sufficiency argument fails.

The second issue raised in the **Anders** brief is that the verdict was against the weight of the evidence.[9] **Anders** Brief at 19. Gibson argues "Mieczkowski's testimony was incredible with regard to material elements of

---

[9] Gibson properly preserved the weight claim in a post-sentence motion. **See** Pa.R.Crim.P. 607.

the crimes charged, including the identification of Gibson as the driver of the vehicle and the timeline of her intoxication." *Id.* at 20. She further contends "that with regard to these elements, Officer's McClure's own observations did not corroborate any of Mieczkowski's otherwise incredible testimony." *Id.* She points to the following: (1) Mieczkowski's description of Gibson wearing dark-colored jeans was disaffirmed by the photograph of her wearing light-colored pants on the night of the incident; (2) Mieczkowski's testimony that he heard loud bangs and saw parts coming down a street while Gibson was driving was contradicted by the officer's testimony that he went to that street and did not see any damage or receive any accident reports; and (3) Gibson's own testimony, in which she stated she had consumed several alcoholic beverages at her friend's house one hour prior to the officer arriving at the home, and that her Blazer already had damage to the side-view mirror and side-panel when she purchased the car. *Id.* at 20-21.

> It is well-settled that when reviewing a weight of the evidence claim,
>
> an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination.

*Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013), *cert. denied*, 134 S. Ct. 1792 (U.S. 2014).

Here, Gibson's weight of the evidence claim is substantially similar to her sufficiency challenge. Gibson asks this Court to reweigh the evidence and give the greatest weight to her own testimony. We decline to do so. As our Supreme Court has made clear, we may not reweigh the evidence and substitute our judgment for the trial court's decision. **See Lyons**, **supra**. Moreover, Gibson's argument fails to explain in what way the trial court abused its discretion in denying her weight claim. We conclude the court did not abuse its discretion in denying Gibson a new trial based on her weight of the evidence claim. Therefore, Gibson's weight claim fails.

As mandated by law, we have independently reviewed the record and agree with counsel that the appeal is wholly frivolous. **See Commonwealth v. Woods**, 939 A.2d 896, 898 (Pa. Super. 2007). For the foregoing reasons, we grant counsel's motion to withdraw from representation and affirm the judgment of sentence.

Judgment of sentence affirmed. Counsel's motion to withdraw granted.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2015