J-S24033-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MALCOLM M. SATCHELL :
:
Appellant : No. 2706 EDA 2017

Appeal from the Judgment of Sentence June 7, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004704-2014,
CP-51-CR-0004705-2014

BEFORE: LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.: **FILED MAY 22, 2019**

Appellant, Malcolm M. Satchell, appeals from the June 7, 2017,
judgment of sentence entered in the Court of Common Pleas of Philadelphia
County at lower court docket numbers CP-51-CR-0004704-2014 ("0004704-
2014") and CP-51-CR-0004705-2014 ("0004705-2014"). After a careful
review, we affirm the judgment of sentence at docket number 0004704-2014,
but we quash the appeal at docket number 0004705-2014.

The relevant facts and procedural history are as follows: On December
15, 2013, Appellant shot three people: Jovannie Cruz, Angel Colon, and
Malcolm McCauley inside a row house in Philadelphia. Mr. Cruz and Mr. Colon
survived the shooting; however, tragically, Mr. McCauley died from his
wounds.

---
\* Former Justice specially assigned to the Superior Court.

Thereafter, at docket number 0004704-2014, Appellant was charged with attempted murder and aggravated assault as to Mr. Cruz.[1] At docket number 0004705-2014, Appellant was charged with third-degree murder as to Mr. McCauley, as well as attempted murder and aggravated assault as to Mr. Colon.[2] Appellant was also charged with various firearms offenses at docket number 0004705-2014.[3]

On March 29, 2017, represented by court-appointed counsel, Andres Jalon, Esquire, Appellant proceeded to a jury trial for the charges at both lower court docket numbers. The trial court has summarized the evidence and testimony presented at trial as follows:

> At trial, Jovannie Cruz testified that, on December 15, 2013, he and his friend, Angel Colon, were sleeping in the front bedroom. Mr. Cruz was awaken by the sound of a gunshot. He saw [Appellant], whom he had known since 2008, pointing a handgun at him. [Appellant] shot him twice, once in the mouth and once in the chest. Following the shooting, [Appellant] told Mr. Cruz to shut up and go to sleep. N.T., March 29, 2017, p. 29-33.
>
> At that point, Mr. Colon got up and stated that he had been shot in the head. N.T., March 29, 2017, p. 33. Police took Mr.

---

[1] 18 Pa.C.S.A. §§ 901 and 2702, respectively. Appellant was also charged with reckless endangerment as to Mr. Cruz; however, the charge was later *nolle prossed*.

[2] 18 Pa.C.S.A. §§ 2502, 901, and 2702, respectively. Appellant was also charged with reckless endangerment generally, but the charge was later *nolle prossed*.

[3] The firearms offenses included firearms not to be carried without a license, 18 Pa.C.S.A. § 6106, and carrying firearms in public, 18 Pa.C.S.A. § 6108.

Colon and Mr. Cruz to Temple Hospital. N.T., March 29, 2017, p. 35.

Earlier that day, [Mr. McCauley ("the deceased")] had made pancakes for Mr. Cruz and Mr. Colon in exchange for marijuana. After the meal, the deceased smoked marijuana and Mr. Cruz smoked K-2; then Mr. Cruz and Mr. Colon went upstairs and fell asleep. N.T., March 20, 2017, p. 36, 37, 54.

On the previous night (December 14 going into December 15), Mr. Cruz, Mr. Colon, and Mr. Colon's sister, Anna Burgos, had stayed in the house. Ms. Burgos' friend, Jennifer Alvarez, came to the house on December 15. N.T., March 29, 2017, p. 38.

Mr. Cruz testified that, as a result of the shots, he has nerve damage in his neck and chest. N.T., March 29, 2017, p. 40.

Police Officer Jeffrey Schmidt testified that on the afternoon of December 15, 2013, in response to a radio call, he and his partner proceeded to [a row house on] Jasper Street. At the doorway of the house, he observed two males and a female. The female informed him that both males had been shot in the head. He directed the males to a medic unit which was on the street. N.T., March 29, 2017, p. 72, 74-75.

Officer Schmidt and his partner searched the house. In the second floor front bedroom, they found the deceased, who appeared to be alive. The deceased was lying on the floor. Part of his body was in a closet and the rest of his body was outside the closet, leaning on an air conditioner. The deceased was bleeding from the right side of his neck. The medics came upstairs and pronounced him dead. N.T., March 29, 2017, p. 76.

Angel Colon testified that, after eating pancakes, he, the deceased, and Mr. Cruz were smoking illicit drugs and watching videos. Mr. Cruz and Mr. Colon went upstairs where they fell asleep.

Mr. Colon woke up and heard Mr. Cruz saying something about being shot. Mr. Colon felt something in his head. He and Mr. Cruz went downstairs. N.T., March 31, 2017, p. 6-8. The nest [*sic*] thing he remembered was being in Temple Hospital. N.T., March 31, 2017, p. 12.

Mr. Colon testified that he was at Temple Hospital for about two weeks and then spent about two or three weeks at Moss Rehabilitation Hospital. Mr. Colon testified that he was shot in the head. In the course of his treatment to remove the bullet, part of his skull was removed and replaced with plastic. He can no longer

see with his left eye. After the shooting, he experienced seizures, which had stopped by the time of trial. He has some problems with memory. His motor skills are not affected. N.T., March 31, 2017, p. 13-15.

Mr. Colon described [Appellant] as a friend whom he had known for five years. N.T., March 31, 2017, p. 15. Mr. Colon sold heroin for [Appellant]. N.T., March 31, 2017, p. 16. This arrangement had been going on for a little less than a month. N.T., March 31, 2017, p. 17. About a week before the shooting, [Appellant] and Mr. Colon had a dispute about the payments. However, on the day of the shooting, there had been no dispute between [Appellant] and anyone in the house. He said that Mr. Cruz also sold drugs for [Appellant]. N.T., March 31, 2017, p. 18.

Anna Burgos, the sister of Angel Colon, testified that at about 1 or 2 p.m., she, the deceased, [Appellant], Jennifer Alvarez, and Angel Colon were "chilling and having a nice day." The deceased made pancakes. N.T., March 31, 2017, p. 53. They ate breakfast, during which she observed a gun on [Appellant's] lap. N.T., March 31, 2017, p. 63-64.

Thereafter, Mr. Burgos went upstairs to her room to watch television. Mr. Colon and Mr. Cruz went upstairs to take a nap. She did not know where [Appellant] had gone. N.T., March 31, 2017, p. 55-56. About half an hour later she called for the deceased. There was no response. She went downstairs to check on the deceased. She asked Ms. Alvarez if she knew where he was. She did not know.

Ms. Burgos went back upstairs and heard someone walking back and forth in the hallway. She returned to her room, then walked downstairs to check on Ms. Alvarez, who was sleeping. When she returned upstairs, Ms. Burgos saw [Appellant] walk into the front bedroom. N.T., March 31, 2017, p. 58.

About five minutes later, Ms. Burgos heard shots. Ms. Burgos ran downstairs and woke up Ms. Alvarez. Ms. Burgos went back upstairs and saw [Appellant] come out of the bedroom. Ms. Burgos asked, "Why did you do that?" [Appellant] looked at her but did not reply. Ms. Burgos went downstairs and sat with Ms. Alvarez on the sofa. [Appellant] walked up to her, shook her hand, and said "Checkmate." N.T., March 31, 2017, p. 59.

Chief Deputy Medical Examiner Dr. Albert Chu testified that the deceased died as a result of a gunshot wound to the head.

- 4 -

The manner of death was homicide. He was 19 years old. N.T., March 31, 2017, p. 93.

Jennifer Alvarez testified that, at about 12:30 p.m. on the day of the shooting, she saw [Appellant] sitting on a couch with a gun in his lap. The previous day she had seen him with a gun in his waistband. N.T., March 31, 2017, p. 107-08.

Detective Gregory Santamala testified that, on December 16, 2013, [Appellant] was taken into custody by the Butler, PA police department. N.T., April 3, 2017, p. 39-40.

A certificate from the Pennsylvania State Police indicating that [Appellant] was not licensed to carry firearms was introduced into evidence. N.T., April 3, 2017, p. 47-48.

[Appellant] testified that on the day of the shootings he was at home in Butler, PA. N.T., April 3, 2017, p. 65.

It was stipulated that if called to testify [Appellant's] sister, Sade Barrow, and mother, Stephanie Barrow, would have stated that [Appellant] had a good reputation as a peaceful, law-abiding citizen. N.T., April 3, 2017, p. 89.

Trial Court Opinion, filed 3/23/18, at 2-7.

At the conclusion of trial, the jury convicted Appellant of the offenses indicated *supra*. On June 7, 2017, Appellant proceeded to a sentencing hearing for both lower court docket numbers, and the trial court imposed an overall aggregate sentence of forty years to eighty years in prison. Appellant was advised of his post-sentence and appellate rights at the conclusion of the sentencing hearing. N.T., 6/7/17, at 18-19.

On June 13, 2017, Attorney Jalon filed on behalf of Appellant a timely counseled post-sentence motion solely for docket number 0004705-2014. Additionally, on June 13, 2017, Attorney Jalon filed a petition seeking to withdraw his representation solely for docket number 0004705-2014.

On June 15, 2017, although Attorney Jalon filed a post-sentence motion solely for docket number 0004705-2014, the lower court made a notation on the docket for 0004704-2014 indicating "post sentence motions have been filed." Further, although Attorney Jalon filed his petition seeking to withdraw his representation solely at docket number 0004705-2014, the trial court entered an order granting Attorney Jalon permission to withdraw at both docket numbers on June 15, 2017. On June 20, 2017, the trial court appointed David Scott Rudenstein, Esquire, to represent Appellant at both lower court docket numbers, and on July 25, 2017, the trial court filed an order at both lower court docket numbers indicating "that Defendant is granted leave to file a *nunc pro tunc* appeal to the Superior Court within 30 days." Trial Court Order, filed 7/25/17.

On August 23, 2017, despite the fact the post-sentence motion remained pending at docket number 0004705-2014, Attorney Rudenstein filed on behalf of Appellant a single notice of appeal listing both lower court docket numbers.[4] Specifically, counsel indicated he was appealing the June 7, 2017, judgment of sentence as to both docket numbers.

---

[4] Our Supreme Court recently held that separate notices of appeal must be filed where appeals have been taken from more than one trial court docket. ***See Commonwealth v. Walker***, ___ Pa. ___, 185 A.3d 969, 977 (2018) ("Rule 341(a) will, in accordance with its Official Note, require that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in

At both lower court docket numbers, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, and Appellant timely complied. Specifically, Appellant filed a single Pa.R.A.P. 1925(b) statement at both lower court docket numbers; the statement presented issues related to his convictions and sentences at both lower court docket numbers. On March 23, 2018, the trial court filed a responsive Pa.R.A.P. 1925(a) opinion.

Preliminarily, we must determine whether we have jurisdiction in this case. It is well-settled that we may raise questions implicating the jurisdiction of this Court *sua sponte*. **Commonwealth v. Horn**, 172 A.3d 1133, 1135 (Pa.Super. 2017).

This Court lacks jurisdiction over nonappealable orders. **Commonwealth v. Claffey**, 80 A.3d 780, 782 (Pa.Super. 2013). The Judicial Code provides that this Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, except such classes of appeals as are within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court. **See** 42 Pa.C.S.A. § 742. In the context of a criminal proceeding, an appeal lies from the entry of the final judgment of sentence. **Commonwealth v. Alvarado**, 650 A.2d 475, 476 (Pa.Super. 1994).

_____

quashal of the appeal."). However, our Supreme Court indicated that its holding in **Walker** applies prospectively from the date of its decision, June 1, 2018. **Id.** Accordingly, since Appellant filed his notice of appeal on August 23, 2017, we decline to quash the instant appeals on this basis.

Pursuant to the Pennsylvania Rules of Criminal Procedure, the question of whether the judgment of sentence is final and appealable depends upon whether the defendant files a timely post-sentence motion.

When post-sentence motions are not filed, the judgment of sentence constitutes a final and appealable order for purposes of appellate review, and any appeal therefrom must be filed within thirty days of the imposition of sentence. Pa.R.Crim.P. 720(A)(3). If post-sentence motions are timely filed, however, the judgment of sentence does not become final for purposes of appeal until the trial court disposes of the motion, or the motion is denied by operation of law. Pa.R.Crim.P. 720(A)(2)(a) and (b); **Commonwealth v. Borrero**, 692 A.2d 158 (Pa.Super. 1997). As the Comment to Rule 720 indicates: "No direct appeal may be taken by a defendant while his or her post-sentence motion is pending." Pa.R.Crim.P. 720 cmt.

In the case *sub judice*, with regard to the appeal at docket number 0004705-2014, the certified record reveals Appellant was sentenced on June 7, 2017, and he thereafter exercised his right to file a counseled, post-sentence motion on June 13, 2017, within the ten-day period prescribed by Pa.R.Crim.P. 720(A)(1). Once the post-sentence motion was timely filed, the trial court had 120 days in which to decide the motion unless, for good cause shown, a thirty-day extension of time in which to decide the motion was granted. Pa.R.Crim.P. 720(B)(3)(a). If the motion was not decided within

120 days or within the thirty-day extension period, it would have been deemed denied by operation of law. **_Id._**

Appellant, however, filed his notice of appeal on August 23, 2017, well before the 120-day period expired and before the trial court ruled on the motion.[5] Although the 120-day period obviously has now expired, the judgment of sentence for docket number 0004705-2014 has not yet been finalized because an appropriate order has not been duly entered upon the docket.[6] The entry of an appropriate order is a prerequisite to this Court's exercise of jurisdiction. **_See Borrero_**, 692 A.2d at 159-60 (holding appeal was premature when filed while post-sentence motion was still pending in trial court); Pa.R.Crim.P. 720(B)(3)(c). Accordingly, we conclude Appellant prematurely filed the appeal for docket number 0004705-2014, and we are compelled to quash the appeal.[7] **_Borrero_**, **_supra_** (quashing appeal as

---

[5] There is no indication Attorney Rudenstein withdrew the post-sentence motion.

[6] We note that, on December 20, 2017, and February 22, 2018, we filed orders directing Appellant to show cause as to why the appeal at docket number 0004705-2014 should not be quashed as interlocutory. We informed Appellant that he could _praecipe_ with the trial court for an order denying his post-sentence motions by operation of law. Appellant neither responded to our orders nor _praeciped_ the trial court for the entry of an appropriate order.

[7] This Court has jurisdiction to consider appeals from collateral orders and certain classes of interlocutory order which are appealable as of right; however, the judgment entered in this case is not appealable pursuant to these rules. **_See_** Pa.R.A.P. 311 and 313. Moreover, Appellant has not sought

interlocutory where the defendant filed timely post-sentence motions and notice of appeal before 120-day period had expired, and prior to the entry of an order finalizing the judgment of sentence).

As this Court has indicated:

> The fundamental purpose underlying the filing of post-sentencing motions is to provide the trial court with the first chance to correct any errors which might warrant an arrest of judgment or the grant of a new trial. In this case, the trial court has been deprived of this opportunity, albeit mistakenly, by virtue of appellant's premature appeal. More importantly, one of the issues raised by appellant relates to the weight of the evidence. This Court cannot entertain, in the first instance, a request for a new trial on grounds that the verdict was contrary to the weight of the evidence because our standard of review of such claims is limited to an examination of the trial court's exercise of discretion in deciding whether to grant or deny a new trial on this basis. The interests of justice therefore require that the trial court consider appellant's post-sentencing motions on remand[.]

**Borrero**, 692 A.2d at 160-61 (footnote and citations omitted).[8]

With regard to Appellant's notice of appeal at docket number 0004704-2014, as indicated *supra*, Appellant was sentenced on June 7, 2017, and despite the fact he was provided with his post-sentence rights, Appellant did not file a post-sentence motion for this docket number. Since Appellant did

---

permission to pursue an interlocutory appeal in accordance with Pa.R.A.P. 312.

[8] We note that our conclusion Appellant's appeal at docket number 0004705-2014 is premature is not altered by the fact that, on July 25, 2017, the trial court purported to grant Appellant relief to appeal *nunc pro tunc*. That is, the *nunc pro tunc* order did not dispose of the post-sentence motions or otherwise render the matter appealable for docket number 0004705-2014.

not file a post-sentence motion at docket number 0004704-2014, his judgment of sentence constituted a final appealable order, and thus, an appeal therefrom typically was required to have been filed within thirty days of the imposition of sentence (*i.e.*, by July 7, 2017). **See** Pa.R.Crim.P. 720(A)(3). Here, Appellant's notice of appeal was filed on August 23, 2017, well beyond the thirty day period.

This Court has no jurisdiction to entertain an untimely appeal. **Commonwealth v. Patterson**, 940 A.2d 493, 498 (Pa.Super. 2007). Generally, an appellate court cannot enlarge the time for filing an appeal. **Id.**; Pa.R.A.P. 105(b). Nonetheless, this general rule does not affect the power of the courts to grant relief in extraordinary cases, such as fraud or some breakdown in the processes of the court. **Patterson**, **supra**. Such a breakdown warrants extension of the appeal period or the grant of an appeal *nunc pro tunc*. **Commonwealth v. Braykovich**, 664 A.2d 133 (Pa.Super. 1995).

Here, as indicated *supra*, there was apparent confusion in the trial court as it pertains to docket number 0004704-2014. That is, Attorney Jalon neither filed a post-sentence motion on behalf of Appellant nor sought to withdraw his representation at this docket number. However, the trial court made a notation on the docket for 0004704-2014 indicating that "post sentence motions had been filed[,]" and the trial court filed an order permitting Attorney Jalon to withdraw his representation at this docket

number. This, in turn, led to the appointment of new counsel at both lower court docket numbers, and the trial court's indication Appellant could appeal *nunc pro tunc* within thirty days of the July 25, 2017, order.

Under these circumstances, we find a breakdown in the operations of the trial court, and consequently, we decline to quash Appellant's notice of appeal from docket number 0004704-2014 on the basis it was untimely filed. Rather, we shall proceed to the issues raised in Appellant's brief for docket number 0004704-2014.

In his first issue, Appellant contends the evidence was insufficient to sustain his convictions for attempted murder and aggravated assault as to Mr. Cruz.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Matthews*, 196 A.3d 242, 249 (Pa.Super. 2018) (quotation omitted).

In this case, Appellant's sufficiency argument is specific in nature; to wit, he avers the evidence was insufficient to prove that he shot Mr. Cruz. In this vein, he avers the evidence reflects that he was merely present in the row house at the time of the shooting.

In light of Appellant's specific sufficiency claim, we need not conduct a thorough review of the evidence to determine whether it can support a finding that all of the elements have been met regarding attempted murder and aggravated assault as to Mr. Cruz. Rather, we will focus on the specific issue raised by Appellant: whether the evidence was sufficient to establish that Appellant was the perpetrator of the crimes.

Here, viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude the evidence sufficiently establishes that Appellant was the person who shot Mr. Cruz on December 15, 2013. For instance, Mr. Cruz testified that he had known Appellant since 2008, and on December 15, 2013, he awoke to Appellant pointing a handgun at him. N.T., 3/29/17, at 31-33. Mr. Cruz indicated Appellant shot him twice and then told him to "shut up and go to sleep." *Id.* at 33.

Moreover, Anna Burgos testified that she was in the house the day of the shooting. N.T., 3/31/17, at 58-59. She saw Appellant go into the bedroom where Mr. Cruz was sleeping, and within five minutes, she heard

gunshots. *Id.* She then saw Appellant leaving the bedroom. *Id.* Ms. Burgos asked Appellant why he had done that, but Appellant did not respond. However, after Ms. Burgos sat on the sofa, Appellant approached her, shook her hand, and said, "Checkmate." *Id.*

Additionally, Jennifer Alvarez, who was also at the row home on December 15, 2013, testified that, prior to the shooting, at around 12:30 p.m., she saw Appellant sitting on the couch with a gun in his lap. *Id.* at 107-08. When she asked Appellant about the gun, he told her "to mind [her] business." *Id.* at 108.

Based on the aforementioned, we conclude the evidence sufficiently establishes that Appellant was the person who shot Mr. Cruz, and therefore, we find no merit to his sufficiency of the evidence claim as to lower court docket number 0004704-2014.

In his final issue, Appellant contends the jury's verdict at docket number 0004704-2014 is against the weight of the evidence. Specifically, he avers the "greater weight of the evidence" reveals that he was merely present in the row home on December 15, 2013, and he did not shoot Mr. Cruz. Appellant's Brief at 12.

As a preliminary matter, we note a challenge to the weight of the evidence must be preserved by a motion for a new trial. Pa.R.Crim.P. 607(A). The Rule provides:

> A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

***Id.*** "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Pa.R.Crim.P. 607, *Comment*. "If an appellant never gives the trial court the opportunity to provide relief, then there is no discretionary act that this Court can review." ***Commonwealth v. Jones***, 191 A.3d 830, 835 (Pa.Super. 2018). A claim challenging the weight of the evidence generally cannot be raised for the first time in a Rule 1925(b) statement. ***Commonwealth v. Sherwood***, 603 Pa. 92, 982 A.2d 483, 494 (2009). "Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." ***Commonwealth v. Thompson***, 93 A.3d 478, 490 (Pa.Super. 2014) (quoting ***Commonwealth v. Lofton***, 57 A.3d 1270, 1273 (Pa.Super. 2012)).

Here, with regard to docket number 0004704-2014, despite being provided with his post-sentence and appellate rights during sentencing, Appellant failed to challenge the weight of the evidence before the trial court in either an oral or written motion for a new trial. ***See*** Pa.R.Crim.P. 607(A). Instead, as to the verdict pertaining to his offenses against Mr. Cruz, Appellant raised his weight claim for the first time in his Rule 1925(b) statement. ***See Sherwood***, 982 A.2d at 494. Hence, Appellant's final issue on appeal as to

docket number 0004704-2014 is waived.[9]    **See** Pa.R.Crim.P. 607(A);
**Sherwood**, 982 A.2d at 494.

For all of the foregoing reasons, we affirm the June 7, 2017, judgment of sentence at docket number CR-0004704-2014; however, we quash the appeal at docket number CR-0004705-2014.

Judgment of sentence at CP-51-CR-0004704-2014 is AFFIRMED. Appeal at CP-51-CR-0004705-2014 is QUASHED.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/19

---

[9] There is no indication that, after Attorney Rudenstein was appointed, Appellant sought to file a post-sentence motion *nunc pro tunc* or the trial court expressly granted any such request as to docket number 0004704-2014. **See Commonwealth v. Dreves**, 839 A.2d 1122 (Pa.Super. 2003) (*en banc*).