J-S33030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PATRICK W. MITCHELL | : | |
| | : | |
| Appellant | : | No. 299 WDA 2023 |

Appeal from the Judgment of Sentence Entered January 25, 2022
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000024-2021

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:               **FILED: DECEMBER 7, 2023**

Patrick W. Mitchell (Appellant) appeals from the judgment of sentence entered in the Erie County Court of Common Pleas after his jury convictions for one count each of aggravated assault, firearms not to be carried without a license, terroristic threats, and recklessly endangering another person (REAP), and two counts of possession of an instrument of crime (PIC).[1] Contemporaneous with this appeal, Appellant's counsel, Tina M. Fryling, Esquire, has filed a petition to withdraw from representation and an **Anders** brief.[2]   The **Anders** brief presents two claims: (1) police illegally searched

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(4), 6106(a)(1), 2706(a)(3), 2705, and 907(b), respectively.

[2] **See Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

Appellant's home and thus, any evidence retrieved should have been suppressed; and (2) the verdict was against the weight of the evidence. For the reasons below, we affirm the judgment of sentence and grant counsel's petition to withdraw.

On December 16, 2020, Appellant got into a verbal argument with Tyler Garver at Garver's home. Garver's roommate — Tyler Johnson — is the son of Appellant's girlfriend, Jennifer Rodney. The verbal argument escalated, and Appellant pointed a gun at and threatened Garver. Johnson and Rodney witnessed the incident. A firearm was later recovered from Appellant's home.

Appellant was subsequently arrested and charged with one count each of aggravated assault, firearms carried without a license, and terroristic threats, two counts of PIC, and three counts of REAP. Relevant to Appellant's claim on appeal, he did not file a motion to suppress the evidence recovered from the search of his home. This matter proceeded to a two-day jury trial on November 2, 2021, where the following evidence was presented.

The Commonwealth first called Garver to testify. He stated that in December 2020, he lived in "Schaaf Place, off Ash Street" with Johnson. *See* N.T., Jury Trial Day One, 11/2/21, at 17-18. Garver testified that leading up to this incident he and Johnson were frequently getting into verbal arguments. *Id.* at 18-19. On December 16, 2020, Garver and his girlfriend were leaving his home in his car when a silver car blocked him in his driveway. *Id.* at 19-20. When the silver car moved into a parking spot, Garver continued to exit his driveway and parked. *Id* at 20-21. Garver began walking back towards

- 2 -

his home where he saw the occupant of the silver car — later identified as Appellant — now standing between his and his neighbor's house with "a pistol[ ] tucked in his hand by his . . . waistband." *Id.* at 21, 25. Garver did not recognize Appellant and asked him "what's going on?" to which Appellant replied, "you don't have to worry about that." *Id.* at 21.

Garver proceeded to reenter his home and Appellant followed him inside. N.T., 11/2/21, at 21. Garver stated that his younger brother, his brother's girlfriend, Johnson, and Rodney were also in the home. *Id.* at 27, 32-33. Garver was attempting to listen to "what[ was] going on" in the home when Appellant became "very irate and hostile[,]" stated he had a gun, and "start[ed] going after" Garver like he was "going to fist-fight" him. *Id.* at 27. Appellant then "put the gun on [Garver's] chest[,]" and said he would fire the weapon. *Id.* at 27-28. Garver started telling Appellant "to shoot [him]" and Appellant "walked away [and] got a little bit calm." *Id.* But "about 30 seconds after that," Appellant approached Garver again and "put[ ] the gun to [Garver's] neck and . . . head area[,]" and threatened to shoot him again. *Id.* at 28. Garver again told Appellant to "use" the gun, and Appellant walked away, went upstairs, then returned and started "ejecting the shells" "seven or eight" times in the dining room of the home. *Id.* Appellant then asked Garver, "you want to fight?" and Garver responded "let's go outside." *Id.* Appellant placed his gun on the table, and the two men proceeded outside. *Id.* at 28, 34. At some point during this interaction Rodney came downstairs to retrieve the gun and discard the fired shells. *Id.* at 34.

Garver testified that once he and Appellant were outside, Appellant pulled out a knife and began "swinging it back and forth in a stabbing motion around [Garver's] abdomen area." *See* N.T., 11/2/21, at 34-35. Appellant was threating to stab Garver and Garver responded, "[p]ut the weapon down and let's fight." *Id.* at 35. Garver's brother exited the house, witnessed this altercation and called their father, who lived "about half a mile" away. *Id.* at 38-39. Garver's father arrived, saw that Appellant had a knife, and "got [Appellant] by the back . . . of the shoulder blades and the collar area[,] pulled him back, and . . . turned him around." *Id.* at 39. Garver's father told Appellant to "[j]ust walk away" and Appellant walked back into Garver's home. *Id.* at 40. Appellant then exited the home with Johnson, Johnson's son, and Rodney. *Id.* They put Johnson's son in Appellant's car and Johnson went back into the house. *Id.* Garver then approached Appellant, who instructed Rodney to "grab the gun." *Id.* Appellant and Rodney drove away about two minutes before police arrived. *See id.* at 42. Relevant to Appellant's argument, trial counsel cross-examined Garver regarding inconsistencies between his statements to police and his trial testimony.

Garver's father and Johnson also testified for the Commonwealth. Though Johnson testified on behalf of the Commonwealth, he stated at trial that he did not see Appellant brandish a weapon at any time during his interaction with Garver. However, he did mention a gun to police in his initial statement. *See* N.T., 11/2/21, at 108, 110-11.

The Commonwealth also presented the testimony of Erie Police Officer Nicholas Spurgeon. Officer Spurgeon stated that on the date of the incident he responded to Schaff Place after receiving a call about a "firearms related incident[.]" *See* N.T. Jury Trial Day 2, 11/3/21, at 5, 8-9. When he arrived, he spoke with Garver, Johnson, and Garver's father about the incident. *Id.* at 9. After Johnson provided the names and address of Rodney and Appellant, Officer Spurgeon traveled to their home and requested additional officers to aid in apprehending Appellant. *Id.* at 10-11. Officer Spurgeon arrested Appellant and while "transporting" him, obtained "consent . . . to retrieve the firearm" used earlier that day. *Id.* at 11, 13, 16. Officer Spurgeon then returned to Appellant's home and recovered a "9mm firearm with a silver slide." *Id.* at 17. Relevant to Appellant's argument on appeal, trial counsel cross-examined Officer Sturgeon regarding his conversations with Garver after the incident.

Appellant testified on his own behalf as follows. Appellant claimed he arrived at the Schaaf Place home with Rodney and their 12-year-old daughter to pick up Johnson's son. *See* N.T., 11/3/21, at 112-13. After arriving, Appellant began to walk up to the house when he noticed Garver walking towards him "aggressively" and "glaring" at him. *Id.* at 116. Appellant testified that Garver got very close to his face, but did not say anything before going into the house and motioning for Appellant to follow him. *Id.* at 116-17. Appellant stated Garver entered the home and began yelling at Johnson, "who is he; what is he doing here[?]" referring to Appellant. *See id.* at 117.

After hearing this, Appellant entered the home, asked what was going on, and tried to separate Garver from Johnson. *Id.* at 117-19. Appellant stated Garver began yelling at him to "pull [his] strap." *Id.* at 119. Appellant then told Johnson and Rodney to "get the baby ready" so they could "hurry up and leave fast" since the situation was escalating. *Id.* at 119-20.

Appellant testified that Garver then approached him with a knife, again telling Appellant to "pull [his] strap[.]" *See* N.T., 11/3/21, at 120-21. Appellant testified that he pulled out his own knife, which was attached to his belt, only after Garver "back[ed him] to the counter in the kitchen[.]" *Id.* at 115-16, 122. Appellant then told Garver, "not to cross the line again, or [he will] kill him [b]ecause [Garver] was threatening [Appellant] with the knife." *Id.* at 122. Garver put his knife away, shook Appellant's hand, and got him a glass of juice. *Id.* at 123. Appellant again told Rodney and Johnson to hurry, and pulled down his face mask — which he had been wearing the entire time he was in the house. *Id.* at 123-24. Garver saw Appellant do this and then "chase[d him] outside." *Id.* While outside, Appellant handed Rodney his knife and "backed [Garver] down with [his] forehead" so Rodney could get to the car with Johnson's son. *Id.* at 125. At that point, Garver's father arrived and told them to leave, which they did. *Id.* at 126. Appellant did not call the police regarding this incident. *Id.* at 127. Rodney also testified for the defense and largely corroborated Appellant's version of events. *See id.* at 73-111.

At the conclusion of trial, the jury found Appellant guilty of one count each of aggravated assault, firearms not to be carried without a license, terroristic threats, and REAP, and two counts of PIC.[3]  On January 25, 2022, the trial court sentenced Appellant to an aggregate term of 40 to 80 months' incarceration followed by an aggregate term of two years' probation.

Appellant did not file a post-sentence motion or direct appeal, but instead on December 27, 2022, filed a *pro se* petition under the Post Conviction Relief Act (PCRA).[4]  In his petition, Appellant alleged, *inter alia*, that he asked trial counsel to file a suppression motion and a direct appeal, but she "refused."  **See** Appellant's *Pro Se* Petition for Post Conviction Collateral Relief, 12/27/22, at 4.  On January 5, 2023, the PCRA court reinstated Appellant's post-sentencing and appeal rights *nunc pro tunc* and appointed Attorney Fryling.  Order, 1/5/23.

Appellant filed a post-sentence motion, which was denied on February 28, 2023.  He then filed the present notice of appeal and complied with the trial court's order to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).[5]

---

[3] The Commonwealth withdrew the two remaining counts of REAP.

[4] 42 Pa.C.S. §§ 9541-9545.

[5] Typically, when the trial court issues an order reinstating direct appeal rights *nunc pro tunc*, the petitioner must file the appeal within 30 days of that order as they receive the same appeal period they would have originally had.  **See Commonwealth v. Wright**, 846 A.2d 730, 734-35 (Pa. Super. 2004).
*(Footnote Continued Next Page)*

Attorney Fryling presents the following claims in the **Anders** Brief:

[1.] The search of the house in this case was conducted without a warrant and without exigent circumstances and was therefore illegal, and all fruits of the search should be suppressed in this case[.]

_____

Pursuant to this reasoning, when a petitioner's post-sentence and appeal rights are both reinstated, the same time limit requirements apply: a post-sentence motion must be filed within 10 days of the order reinstating post-sentence rights, and a notice of appeal must be filed either within 30 days of the order reinstating appeal rights, or within 30 days of the order denying the post-sentence motion. **See** Pa.R.Crim.P. 720(A)(1) ("a written post-sentence motion shall be filed no later than 10 days after imposition of sentence"), (A)(2) (when a petitioner files a timely post-sentence motion, a notice of appeal shall be filed within 30 days of the entry of the order denying the motion); Pa.R.A.P. 903(a) (notice of appeal shall be filed within 30 days from the entry of the order from which the appeal is taken).

Further, this Court cannot extend the time in which a petitioner may file an appeal, however when there is a "breakdown in the courts[,]" we may grant limited relief to excuse the late filings. **See Commonwealth v. Patterson**, 940 A.2d 493, 498 (Pa. Super. 2007). This Court has held that such a breakdown occurs "where the trial court, at the time of sentencing, either failed to advise [a petitioner] of his post-sentence and appellate rights or misadvised him." **Id.** (citations omitted).

Here, Appellant's post-sentence and appeal rights were reinstated on January 5, 2023. The trial court misinformed Appellant that he had 30 days to file a post-sentence motion. **See** Order, 1/5/23. After issuing this order, the court then granted Appellant an extension to file his post-sentence motion within 20 days of receiving the notes of testimony from this matter. **See** Order, 2/3/23. Appellant filed his post-sentence motion within this period. He then filed a notice of appeal within 30 days of the court's order denying his post-sentence motion.

Therefore, although Appellant filed his post-sentence motion and notice of appeal outside of the requisite time periods, we conclude these late filings are attributed to the court misinforming him of the proper time constraints in which to file, amounting to a breakdown in the courts. **See Patterson**, 940 A.2d at 498.

[2.] The verdict in this case was against the weight of the evidence in that [Garver's] testimony was inconsistent with his prior statements.

***Anders*** Brief at 2.[6]

When, as here, counsel files a petition to withdraw and an accompanying ***Anders*** brief, we must first examine the request to withdraw before addressing any of the substantive issues raised on appeal. ***Commonwealth v. Bennett***, 124 A.3d 327, 330 (Pa. Super. 2015). An attorney seeking to withdraw from representation on appeal must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*). Pursuant to ***Santiago***, counsel must also:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Id.***, *quoting* ***Santiago***, 978 A.2d at 361.

---

[6] The Commonwealth did not file a brief.

Attorney Fryling substantially complied with the requirements of *Anders* and *Santiago*. *See Cartrette*, 83 A.3d at 1032. However, we point out that counsel's application to withdraw and letter to Appellant appear to use the terms "meritorious" and "frivolous" interchangeably. *See* Petition For Leave to Withdraw as Counsel, 6/20/23, at 1-2 (unpaginated); *see also* Attorney Fryland's Letter to Appellant, 6/20/23, at 1 (unpaginated). We remind counsel that the correct standard required to withdraw from representing a client on direct appeal is a determination that the appeal is **frivolous**. *See Cartrette*, 83 A.3d at 1032; *Santiago*, 978 A.2d at 361. The two terms are not synonymous. *See Commonwealth v. Hipps*, 274 A.3d 1263, 1271 n.3 (Pa. Super. 2022) ("Frivolousness and meritlessness are distinct concepts. [F]rivolousness is a slightly higher standard than lack of merit; an argument may be meritless, but not frivolous.") (citations & quotation marks omitted); *Commonwealth v. Smith*, 700 A.2d 1301, 1305 n.10 (Pa. Super. 1997) ("[A]n appeal is frivolous where it lacks any basis in law or fact.") (citation & quotation marks omitted).

Nevertheless, while Attorney Fryland used both terms in her petition to withdraw and her letter to Appellant, we can surmise from the arguments in the *Anders* brief that she concluded Appellant's purported claims were frivolous. Thus, we accept her application and conclude it substantially meets the requirements of *Anders* and *Santiago*. Further, counsel has provided this Court with a copy of the letter she sent to Appellant, advising him of his right to proceed *pro se* or retain private counsel, and to raise any additional

claims. *See* Attorney Fryland's letter to Appellant, 6/20/23. Appellant did not file a response. Thus, we proceed to address the substantive claims presented on appeal, and then conduct "a full examination of all the proceedings, to decide whether the case is wholly frivolous." *Commonwealth v. Yorgey*, 188 A.3d 1190, 1196 (Pa. Super. 2018) (*en banc*) (citation & quotation marks omitted). If we agree with Attorney Fryland's assessment, "[we] may grant [her] request to withdraw and dismiss the appeal[.]" *Id.* (citation & quotation marks omitted).

As mentioned above, the *Anders* brief presents two claims for our review — that the police improperly searched Appellant's home without a warrant or his consent, and that the verdict was against the weight of the evidence.

First, Appellant avers the police searched his home without a warrant or his permission. *Anders* Brief at 10. Appellant contends that after Officer Spurgeon placed him in his police vehicle, he "went back to the house and told [Rodney] that [Appellant] had given [the officers] permission to go into the house and obtain a gun." *Id.* He further maintains that police informed Rodney that if she did not permit the search, "she and [Appellant's] children would have to stand outside until the police obtained a warrant." *Id.*

Upon review of the record, we conclude Appellant has waived this claim when he failed to raise it in a pretrial motion. The record reflects, and Attorney Fryland notes in the *Anders* brief, Appellant never filed a motion to suppress.

- 11 -

*See Anders* Brief at 12, n.1.[7]  Therefore, the trial court had no opportunity to address this argument, and it is waived on appeal.  *See* Pa.R.A.P. 302(a) (issues not raised in lower court are waived and cannot be raised for first time on appeal); Pa.R.Crim.P. 581(B) (request for suppression of evidence must be made in a pretrial motion "[u]nless the opportunity did not previously exist, or the interests of justice otherwise require," and failure to do so will result in waiver of claim).

Moreover, even if Appellant had properly preserved this claim, he would not be entitled to relief.  As mentioned above, Officer Spurgeon testified that he obtained "consent [from Appellant] to retrieve the firearm" used during the incident from Appellant's home after placing him in his police vehicle.  *See id.* at 16.  As Attorney Fryland points out in the *Anders* brief, although Appellant and Rodney both testified at trial, neither of them contradicted Officer Spurgeon's statement that Appellant consented to the search of his home. *See Anders* Brief at 12.  Thus, any assertion that Appellant now attempts to raise that he did not consent to the search would be unsuccessful.  *See* Pa.R.A.P. 302(a).

_____

[7] Appellant, however, did file two pretrial motions, which addressed the Commonwealth's ability to: (1) question Appellant and other witnesses "on the veracity of another witness' testimony[;]" and (2) refer to Garver as "victim" or "alleged victim" during the proceedings.  *See* Appellant's Motion to Prohibit the Commonwealth from Questioning Defendant or any Witness on the Veracity of Another Witness' Testimony or Statements, 11/1/21, at 1 (unpaginated); Appellant's Motion to Prohibit Commonwealth from Referring to Complainant as "Victim" or "Alleged Victim[,]", 11/1/21 at 1 (unpaginated).

Next, Appellant purports to challenge the weight of the evidence. **Anders** Brief at 12. He maintains Garver "stated different things in his preliminary hearing" testimony than he did at trial, and the jury's verdict "shocks the conscience." **Id.** at 13.

Upon review of the record, we conclude Appellant has waived this claim as well because he failed to include it in his court-ordered Pa.R.A.P. 1925(b) concise statement. "Issues not included in the [Rule 1925(b)] Statement and/or not raised in accordance with the provisions of [Pa.R.A.P. 1925](b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii); **see also Commonwealth v. Johnson,** 51 A.3d 237, 246-47 (Pa. Super. 2012) (*en banc*) (waiving issues not specifically raised in Rule 1925(b) statement).

While Appellant preserved a challenge to the weight of the evidence in his post-sentence motion,[8] he included no reference to that claim in his Rule 1925(b) statement. **See** Appellant's Motion for Post-Sentence Relief, 2/27/23, at 2. Instead, his Rule 1925(b) statement raised only two claims: (1) police searched his home without a warrant or his consent; and (2) trial counsel failed to cross-examine Garver about prior inconsistent statements. **See** Appellant's Statement of Matters Complained of On Appeal, 3/21/23, at 2 (unpaginated). Attorney Fryland attempts to combine Appellant's arguments regarding the improper cross-examination and the weight of the

---

[8] **See** Pa.R.Crim.P. 607(A)(1)-(3) (weight claims must be preserved in the trial court by oral or written motion before sentencing or in a post-sentence motion).

evidence in the **Anders** brief. **See Anders** at 12-16. However, a challenge to trial counsel's alleged ineffectiveness is not the same as a challenge to the weight of the evidence the factfinder chooses to believe in deliberations.

Further, it is particularly important for a defendant to include a weight challenge in their Rule 1925(b) statement, so the trial court has ample opportunity to address the issue in its opinion. This Court's standard of review only grants us the ability to review the trial court's determination of whether the verdict was against the weight of the evidence, not reweigh the evidence that was presented at trial. **See Commonwealth v. Lyons**, 79 A.3d 1053, 1067 (Pa. 2013) (When reviewing a challenge to the weight of the evidence, "an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the evidence, but, rather, determines only whether the trial court abused its discretion in making its determination.") (citations omitted)

Furthermore, we note Appellant's claim amounts to an assertion that the jury should have discredited Garver's testimony due to Garver's inconsistent statements. **See Anders** at 12-13. Contrary to Appellant's contentions, trial counsel did in fact conduct a thorough and detailed cross-examination of Garver **and** Officer Spurgeon regarding Garver's differing statements to police and at trial. **See** N.T., 11/2/21, at 54-73; N.T., 11/3/21, at 55-58. Ultimately, Appellant's argument would have this Court reweigh the evidence in his favor, which is beyond our scope of review. **See Lyons**, 79 A.3d at 1067.

- 14 -

As required by **Anders**, this Court has independently reviewed the record and concluded there are no non-frivolous issues to be raised on appeal. **See Yorgey**, 188 A.3d at 1196. We affirm the judgment of sentence and grant Attorney Fryland's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw as counsel granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/7/2023